BRY-BLOCK MERCANTILE CO., INC., et al. v. MRS. J. M. PROCTOR.

Western Section.  April 30, 1929.

Petition for Certiorari denied by Supreme Court, March 1, 1930.

Canada, Williams &˙Russell and E. L. Lerner, all of Memphis, for plaintiff in error.

W. G. Cavette and H. S. Buchanan, both of Memphis. for defendant in error.

SENTER, J. For convenience the parties will be referred to as in the court below, Mrs. J. M. Proctor, plaintiff, and Bry-Block Mercantile Co., Hayes Flowers, Jack Dillon and O. L. Wooley, defendants.

The plaintiff sued the defendants jointly for damages growing out of the transaction in which the plaintiff was arrested on a warrant charging her with larceny while she was engaged as a saleslady in the Bry-Block Mercantile Co., store in Memphis. The declaration was in three counts. The first count charged malicious prosecution in the swearing out of the warrant and in having plaintiff arrested on said warrant. The second and third counts charged conspiracy of the defendants jointly to slander and slandering the plaintiff by accusing her, to others with having stolen certain property from the defendant, Bry-Block Mercantile Co. A demurrer was filed to the second and third counts, and was sustained by the court, but plaintiff was permitted to amend the second and third counts, and the second and third counts of the declaration as amended were also demurred to by the defendants, and this demurrer was overruled and disallowed. The defendants then filed a plea of not guilty to each of the counts of the declaration. At the conclusion of the plaintiff's evidence the defendants moved the court for a directed verdict, which motion was overruled, and at the conclusion of all the evidence the defendants again moved for a directed verdict on each of the three counts of the declaration. The court sustained the motion for

a directed verdict, or rather indicated that he would sustain the motion for a directed verdict as to the second and third counts, and whereupon, the plaintiff took a non-suit as to the second and third counts. Whereupon, the court overruled the motion for a directed verdict made by the defendants to the first count. The suit was voluntarily dismissed as to Flowers.

The trial of the case resulted in a verdict by the jury of $5,000 compensatory damages and $2500 punitive damages.

A motion for a new trial was made by the respective defendants, which motion was overruled by the court and a judgment rendered against the three remaining defendants for the sum of $7,500, and the costs of the case.

From the action of the court in overruling the motion for a new trial and rendering judgment against the defendants, they have appealed to this court in the nature of a writ of error, and have assigned errors.

The first assignment is that there is no evidence to support the verdict, and the second and third assignments allege error in overruling the motion of defendants for a directed verdict in their favor, first, at the close of plaintiff's evidence in chief, and second, in overruling defendants' motion for a directed verdict in their favor made at the close of all the evidence. These three assignments will be considered and disposed of collectively later in this opinion.

The fourth assignment is directed to the following portion of the charge of the court:

"Now, Gentlemen, there are, as you know, many different crimes and degrees of crimes, but I am of the opinion, as a matter of law, that if Mrs. Proctor, as a saleslady at Brys, made an exchange of a gown, by fraudulently doing so in that no gown was given her by the prospective purchaser for the one that she gave the purchaser, that the existence of that fact or those facts, would not be probable cause for the particular crime that she is charged with in this warrant, that she feloniously, did steal, take, carry away one lady's gown, the property of New Bry's, the value of $2.98. This is one feature of the question of probable cause."

On the question of the correctness of this charge, it becomes necessary to state the facts as disclosed by the record. It appears that the plaintiff, Mrs. J. M. Proctor, had been employed for a considerable time in the silk underwear department of the Bry-Block Mercantile Co., in Memphis, and at the time of the incident out of which this suit arose, she was the assistant manager of the silk underwear department. She had been employed by the defendant, Bry-Block Mercantile Co., for about seven years, beginning as a saleslady, and was gradually promoted to the position of assistant

manager of the department. The Bry-Block Mercantile Co. operated a large department store in the City of Memphis, and was generally referred to as Bry's, or New Bry's, or the Bry-Block Mercantile Co., but its corporate name was "Bry-Block Mercantile Co., Inc." This concern had many various departments, and numerous employees, managers, superintendents, etc. On January 24, 1927, the defendant, O. L. Wooley, who was at that time the assistant superintendent in the employ of Bry-Block Mercantile Co., and also as a part of his duties, served as a kind of house detective, received information from one of the lady employees in the store, that certain irregularities and petty thefts were being committed by Mrs. Proctor. It appears that this lady got her information as to these irregularities from other young ladies working in the department under Mrs. Proctor. Upon receiving this information, Mr. Wooley had several of the young ladies working in the department to come to his office where he interviewed them separately, and from them obtained written statements relative to certain acts of Mrs. Proctor. The substance of all these statements was that, a Miss Henderson who was employed in the bakery department as a saleslady, came to the silk underwear department ostensibly to purchase a lady's nightgown; that she did not have any package of any kind with her at the time, and after a selection was made Mrs. Proctor had one of the sales girls in the department to make out a check on the usual form provided, which showed the nightgown purchased at the price of $2.98, and on the same check was written one nightgown, $2.98, returned, or exchanged. Upon these statements having been signed by several of the salesladies in the department, who claimed to have witnessed the transaction and to have observed that no purchase was actually made, but that the nightgown had been given to Miss Henderson by Mrs. Proctor, and the ticket or check for the sale was so made as to have it appear that the nightgown had been purchased and exchanged, Mr. Wooley sent for Miss Henderson and interviewed her with reference to the transaction, and Miss Henderson admitted that she had not purchased the nightgown, but stated that she had given to Mrs. Proctor bread and rolls from the bakery department, and that when she went to the silk underwear department she told Mrs. Proctor about the price of gown that she desired to purchase, but Mrs. Proctor showed to her a more expensive gown, and when she went to pay for the same Mrs. Proctor declined to take the money but made up the ticket, or had the same done, by another lady who worked in the department, so as to have it appear that a nightgown had been exchanged, and gave to her the nightgown in question. Miss Henderson made a written statement and signed the same disclosing the nature of the transaction.

After business hours, Mr. Wooley called Mrs. Proctor and requested that she go with him to the offices of defendants Flowers and Dillon, who it appears conducted a private detective agency for four of the large department stores in Memphis, and also a retail merchants agency, and at the time told her that he wanted her to go with him for the purpose of discussing irregularities in her department. The offices of Flowers and Dillon were located in the Chamber of Commerce Building. There is some conflict in the evidence as to what occurred at the time in the offices of Flowers and Dillon, but it does appear that the matter of the irregularities was discussed with Mrs. Proctor, and she was no doubt closely questioned by Mr. Dillon and Mr. Wooley with reference to the nightgown incident and probably other apparent irregularities. Mrs. Proctor at that time denied that she was guilty of any wrong doing or that the transaction was irregular but claimed that a proper exchange of merchandise had been made. On the following morning, Mr. Wooley went to the law office of Mr. Williams to advise with him about the incident. It appears that Mr. Wooley had with him at the time the written statements signed by four of the ladies interviewed by him, and also a number of tickets signed by Mrs. Proctor and submitted these written statements and these several tickets to Mr. Williams. He also told Mr. Williams at that time that Mrs. Proctor had been interviewed in the offices of Flowers and Dillon, and that she had denied that she was guilty of any wrong doing. After examining the written statements of the salesladies in the department and the written statement of Miss Henderson, and also the tickets or checks, and especially the check covering the nightgown, Mr. Williams, who was the regular attorney for the Bry-Block Mercantile Co., advised Mr. Wooley that Mrs. Proctor was guilty of larceny of the nightgown, and proceeded to write a written opinion to that effect and advised the prosecution of Mrs. Proctor on that account. This letter written by Mr. Williams, as the attorney of Bry-Block Mercantile Co., is in the following language:

"January 26, 1927.

"Bry-Block Mercantile Co.,

"Memphis, Tennessee.

"Gentlemen:

"In re: Case of Mrs. Proctor.

"I have read the statements dated January 25, 1927, made by Miss Elizabeth Henderson, Miss Juanita Georgie Friddel, Mrs. Lillian Estelle Pearce, and Miss Flora Mae Sanford Taylor; and in my judgment, Mrs. Proctor is clearly guilty of petty larceny or fraudulent breach of trust on January 24, 1927, of one gown of the value of two dollars ninety-eight cents, and re-

ferred to in sales check number 2529-40, and also of many similar transactions.

"I have picked out this one item because it is definite and may be used as the basis of the prosecution.

"In respect to this item, Miss Friddel states:

" 'On January 24, I know that a lady who is employed in Bry's Bakery Department came into the department and was approached by Mrs. Proctor, and that she did not have in her possession any package or merchandise to be returned. She purchased from Mrs. Proctor one gown valued at two dollars and ninety-eight cents. Mrs. Proctor wrote out the sales check on book 2529, check No. 40. This check read, "one gown two dollars and ninety-eight cents, one gown returned, two dollars and ninety-eight cents." The package was wrapped and inspected by me."

"Miss Taylor states:

" 'On January 24, 1927, a young lady came into the department who I knew to be employed in the bakery department at the New Bry's. I know that when this lady entered the department she did not have a package in her possession. She was approached by Mrs. Proctor, and after having been shown a number of garments; she made her selection, which was a voile gown. She took from her purse some money and offered to pay Mrs. Proctor for the gown, Mrs. Proctor saying to the customer that this is an even exchange. Mrs. Proctor was making out the sales check when the customer offered her the money. She wrote this sales check on book 2529, check No. 40, to read, "one gown two dollars ninety-eight cents. One gown returned two dollars and ninety-eight cents." She then came to me and said: "Here, Taylor, sign this exchange." I hesitated in signing this, but I could not say anything at that time, as I was busy with a customer.'

"The above three witnesses do not name the 'customer,' but Elizabeth Henderson, who states that she is employed in the bakery department, says that she is the party. Miss Henderson states:

" 'On January 24 I went to the underwear department, third floor, and told Mrs. Proctor I wanted to look at some gowns. Mrs. Proctor went to the counter, picked one out, orchid color, two dollars and ninety-eight cents, and asked me how I liked it. I told her I did not care to pay over two dollars. She said: "That is alright," and made out a check for two dollars and ninety-eight cents and then wrote on the check "one gown returned two dollars and ninety-eight cents." I offered Mrs. Proc-

tor money for the gown. She said: "That is alright, even exchange." On her way to the desk she had one of the girls sign the slip, even, exchange. The package was wrapped and handed to me by Mrs. Proctor.'

"You will note that the sales check referred to has Miss Taylor's name signed to it.

"I also understand that Mrs. Proctor denied her guilt. However, I am of the opinion from these statements submitted to me that she is unquestionably guilty.

"Yours very truly,
"Auvergne Williams."

Upon the advice of Mr. Williams as set forth in the above letter, Mr. Wooley went to the office of a Justice of the Peace and had the warrant issued. This warrant charged the offense of petty larceny in the following language: "Mrs. J. M. Proctor did commit the offense of feloniously steal, take and carry away one lady's gown, property of New Bry's, value $2.98."

In the above portion of the general charge to the jury made the basis of the fourth assignment of error, the court expressed the opinion that if the facts were found to be true that it did not constitute the offense of larceny, and would not, therefore, justify the defendants in having the plaintiff arrested on a charge of larceny, or to use the words of the learned trial judge where he says in the charge, ", . . that if Mrs. Proctor, as a saleslady at Bry's, made an exchange of a gown, by fraudulently doing so, in that no gown was given her by the prospective purchaser for the one that she gave the purchaser, that the existence of that fact or those facts would not be probable cause for the particular crime that she is charged with in this warrant, that she did feloniously steal, take, carry away one lady's gown, the property of New Bry's, the value of $2.98."

This charge was a practical instruction to the jury that if the plaintiff made a fraudulent exchange of the gown, in that no gown was bought and no gown returned, that this would not constitute the crime of larceny, and that the existence of these facts would not be probable cause for having the warrant issued and the plaintiff arrested.

We are of the opinion that this portion of the charge of the learned trial judge is erroneous. If the plaintiff did the thing that Miss Henderson, and the other ladies who signed the statements, said she did, viz. having in her custody merchandise belonging to the Bry-Block Mercantile Co., fraudulently pretended to make a mere exchange with a customer of merchandise bought and returned for exchange, and fraudulently made out a ticket or check purporting

to show a legitimate exchange of merchandise purchased and returned for exchange, but in reality resorted to this scheme or method in order to make a present of this merchandise to Miss Henderson, and without paying for the same, she was clearly guilty of either the offense of larceny, fraudulent breach of trust, or of embezzlement. These are kindred offenses, and under the statutes in this State it is frequently difficult to determine under a given state of facts, just which of these three kindred offenses have been committed. They are all crimes by statute, and frequently the distinguishing line is difficult to apply, although it is patent that one of the three offenses has been committed. Mr. Williams, who is an able and conscientious lawyer, in advising his client, gave it as his opinion that under the facts as disclosed, Mrs. Proctor was guilty of the crime of larceny or fraudulent breach of trust, and upon this advice the warrant was issued charging larceny of the nightgown. We think it immaterial whether the transaction was larceny, embezzlement, or fraudulent breach of trust, if the warrant was procured in good faith and without malice and upon probable cause that the offense had been committed.

If it is material at all to classify the offense under the facts, we are inclined to the opinion that if the transaction occurred as related by the salesladies in their respective statements, and especially under the statement of Miss Henderson, that it constituted larceny under Section 6544 of Shannon's Annotated Code, which reads as follows: "A fraudulent appropriation of property by any person to whose charge or care it is delivered, subject to the immediate orders of the owner, or to the use of it in his presence, or for the purpose of his trade, is larceny."

The rule is stated in 36 C. J., page 786, section 169 (D), as follows:

"The authority given a clerk to sell the goods in a shop in which he is employed does not confer upon him any possessory rights in them, and if he converts the goods to his own use, he is guilty of larceny; but if he sells them in the regular course of business he is not rendered guilty of their larceny by feloniously misappropriating the proceeds."

In support of the above rule numerous cases are cited, under Note 37. (Atterberry v. State, 58 Ark., 515, 20 S. W., 41; Marcus v. State, 26 Ind., 101; Abel v. State, 86 Nebr., 711, 126 N. W., 316; Peo v. Call, 1 Den. (N. Y.), 120, 43 Am. Dec., 655; Cobletz v. State, 36 Tex., 353; Walker v. Commonwealth, 35 Va., 743.

Applying the above rule, it is clear that if a clerk in a store takes merchandise and appropriates it to his own use from the proprietor of the store, he would be guilty of larceny. Miss Henderson testi-

fied that she was accustomed to giving Mrs. Proctor bread and rolls from the bakery department without making any charge to her for the same, and it appears from her evidence that Mrs. Proctor was reciprocating by taking this merchandise from her department, of which she was the assistant manager, and giving it to Miss Henderson. There is no claim made that Mrs. Proctor paid for this merchandise alleged to have been given by her, through the method resorted to, to Miss Henderson. If the facts of the transaction were as related by the salesladies and by Miss Henderson, and which facts were before the attorney, Mr. Williams, at the time he gave the advice, it constituted a taking of the merchandise belonging to the Bry-Block Mercantile Co., which was an appropriation of the same by Mrs. Proctor to her own use and the giving of the same by her to Miss Henderson. This, we think, would constitute the crime of larceny. But as above stated, for the purpose of determining whether or not there was probable cause for the suing out of the warrant charging plaintiff with the crime of larceny, we think it is immaterial. The learned trial judge was evidently weighing the facts as though the plaintiff was being tried on an indictment charging larceny in a criminal court. Appellee cites numerous cases and authorities in support of the contention that if one is indicted for the crime of larceny, and the evidence fails to show that the defendant is guilty of larceny, but is guilty of some other offense, the indictment cannot be sustained, and the prosecution must fail. However sound that contention may be and however well supported by authority, it is not applicable in a case charging malicious prosecution. The layman who sues out the warrant cannot be held to an accurate classification of the offense under certain facts. The present case presents an excellent illustration. Mr. Williams, a lawyer of recognized ability, classified the offense as larceny. The learned trial judge stated in the course of the trial that he did not consider that the facts as contended for by the defendants constituted the crime of larceny. The learned trial judge did not state what offense if any, Mrs. Proctor was guilty of by the transaction and facts alleged to have been shown by the written statements of the ladies in her department and Miss Henderson. However, the fact remains, that if the plaintiff took the merchandise belonging to her employer and gave it to Miss Henderson, and resorted to the fraudulent scheme of having the check show an exchange of merchandise, she was guilty of a crime punishable by law. Certainly one could not be charged with an offense of an entirely different nature and character from larceny, and charge larceny and justify the act under the rule of probable cause, such for instance as charging one with

murder when larceny or arson or some entirely different offense had been committed. But such is not the case before us.

We think this portion of the charge complained of under this assignment of error was not only error but harmful and prejudicial to the defendants, and clearly gave to the jury an instruction that the prosecution of plaintiff by the defendants was without probable cause, even though plaintiff had been guilty of the acts and conduct as contended for by the defendants, since this instruction to the jury plainly stated that these acts and conduct upon her part would not constitute probable cause for having her arrested under the warrant charging larceny.

Reverting to the first, second and third assignments of error, we are of the opinion that they cannot be sustained under the record. There was some conflict in the evidence as to whether Mr. Wooley acted solely on the advice of counsel in having the warrant issued and served. Under the evidence of plaintiff it appears that Wooley sought to have a further conference with plaintiff, and sought to have her again accompany him to the offices of Flowers and Dillon, and as she claimed, to undergo further grilling and humiliation, and that upon her refusal to go again with him to these offices, he showed some anger, and hurriedly went to the office of the Justice of the Peace and procured her arrest on the warrant. There is other evidence in the record that supports plaintiff's statement on this subject. The deputy sheriff who served the warrant stated that Mr. Wooley, when he came to the Magistrate's office, demanded prompt action in making the arrest and accompanied him to the building on Main street where plaintiff had gone to consult her lawyer. This would constitute some evidence of malice resulting from the refusal of plaintiff to again go with Wooley into another unpleasant conference about the matter. We think it clear from the record that a fair disclosure of all the facts in possession of Wooley was made to Mr. Williams, the attorney, at the time he sought Mr. Williams' advice. He may not have detailed all that occurred in the conference between plaintiff and Wooley and Dillon on the afternoon preceding in the offices of Flowers and Dillon, but he did inform Mr. Williams that the plaintiff denied her guilt. This was all that was material for him to disclose to Mr. Williams with reference to the conference. He delivered to Mr. Williams the signed statements of the several salesladies working in the department with plaintiff and also the signed statement of Miss Henderson, with whom the alleged illegal transaction occurred. If nothing more appeared, we think Mr. Wooley would have been warranted in acting upon the advice of Mr. Williams in having the warrant for the arrest of plaintiff issued. But the fact that Wooley sought a further conference with plaintiff and sought to have her go again to the of-

fices of Dillon to be further interrogated with reference to the transaction, would afford some basis for an inference that Wooley was not entirely satisfied to act on the advice received by him from Mr. Williams, and that he also became angered at the attitude of plaintiff in refusing to go again with him to Dillon's office to be further interrogated.

There are other assignments of error directed to the action of the court in refusing to give in charge to the jury certain special requests tendered by the defendants. We have examined these special requests and think they were properly refused.

The seventh assignment of error is based upon the refusal of the court to give special instruction No. 3, which is as follows: "The court instructs the jury that if you find from the evidence that the defendants, in good faith, believed that plaintiff was guilty of larceny on January 24, 1927, of one gown, the property of the Bry-Block Mercantile Co., your verdict will be for the defendants." If this special request had gone further and said, "and if you find that the defendants had probable cause for so believing," or words of similar import, it would have been proper, and the failure to so instruct the jury upon the request being made, would have been error. But the special request as tendered, did not submit the question as to whether defendants had probable cause for so believing, it only states that if the defendant, in good faith believed that plaintiff was guilty of larceny of the gown, etc. In the form in which the request was presented we think it was not error to refuse to give it in charge.

The eighth assignment goes largely to the general charge on the subject of the advice of counsel as constituting probable cause. We think the charge on this subject contains a fair statement of the rule, and is not subject to the criticism made by counsel.

There are other assignments of error which we deem it unnecessary to discuss in detail in the view of the case we have taken.

We are of the opinion that the fourth assignment of error must be sustained. It results that the judgment is reversed and the case is remanded to the circuit court of Shelby county for a new trial. Appellee will pay the cost of this appeal.

Owen, J., and Holmes, Sp. J., concur.