POSTER *v.* ANDREWS.

(*Knoxville,* September Term, 1945.)

Opinion filed May 4, 1946.

Harry Strauss and Poore, Kramer & Overton, of Knoxville, and W. J. Barron, of Morristown, for plaintiff in error.

H. C. Smith, of Morristown, for defendant in error.

Mr. Justice Chambliss delivered the opinion of the Court.

This litigation is the troubled aftermath of what appears to have been, in effect, a common-law marriage relationship between the parties. The action is for malicious prosecution brought by the woman against the man with whom she had thus lived for some eight or ten years. A judgment for the plaintiff for $2,500 was affirmed by the court of appeals. This Court granted *certiorari* and has heard argument.

In 1940 a separation agreement was entered into by which, in settlement of plaintiff's claims for damages for breach of promise to marry, Poster, a man of considerable means, bound himself to make periodic payments of $15 to plaintiff, by analogy to alimony. Follow-

ing default in the making of these payments, plaintiff sued. Poster for breach of promise. The jury awarded her $15,000, which the trial judge reduced to $7,500. The court of appeals, 26 Tenn. App. 86, 167 S. W. (2d) 1001, reversing the trial court, sustained a plea of accord and satisfaction. This court reversed and affirmed the judgment for $7,500, holding that this plea did not reach renewed promises to marry which were alleged and proven to have been made after the execution of the settlement agreement above mentioned. See *Poster* v. *Andrews,* 182 Tenn. 671, 189 S. W. (2d) 580.

The instant suit grows out of matters which arose while the former suit was pending in this Court. It appears that, although doing a profitable business and in affluent circumstances, Poster constantly embarrassed plaintiff by refusing to meet when due the $15 installment payments, forcing her to sue thereon. Thus harrassed and aggravated, she sought to interview him by phone and in person and was constantly repulsed. Thus matters stood when, on the afternoon of March 22, 1943, about 5 p. m., she secured admittance to his place of business in Morristown and succeeded in seeing and importuning him to pay her past-due installments then aggregating several hundred dollars. He refused to pay her or to discuss the matter and proceeded to eject her forcibly from his office out on to the sidewalk, and summoned an officer to arrest and remove her. She then discovered that, in some manner she can not clearly explain, she had gotten possession of a wrist watch he had been wearing which had been a gift to him from employees, in the selection and making of which she had participated. She was thus in possession of this watch when taken by the officer to the jail. There she turned it over to either the sheriff, or her attorney, Mr. Smith, who had been sum-

moned, and it was at once returned to Poster. She made no claim to it and says she had no thought or intention of stealing it. Meanwhile, Poster swore out a warrant charging her with larceny of this watch. The next day she was bound over at the preliminary trial and kept in jail pending disposition of the case. Several months passed. She testifies, without denial by Poster, who did not take the stand, that he visited her, took her out in his car, and endeavored to get her to accept a cash settlement of her contract for the installment payments, dismiss her suit then pending in this Court and leave the state, offering, if she would do these things, to dismiss the charge of larceny and release her from jail; that otherwise she would be kept in jail indefinitely, and if she got out on bond would be again arrested, or placed in an asylum, as she had been by him on a former occasion. She refused and later Poster withdrew his charge of larceny and brought about the abandonment of the prosecution and she was released from jail, after having been kept there three months and three days. This action followed.

The trial judge submitted to the jury the question whether or not, in the light of these facts and circumstances, the defendant had probable or reasonable cause in good faith to believe that this woman had been guilty of larceny in the taking of his watch; that if he had acted without such probable cause and been actuated by malice, the plaintiff was entitled to recover. He correctly defined larceny as "the felonious taking and carrying away of the personal goods of another, against the owner's consent, and with the intent to permanently deprive the owner of the use thereof."

It may be said just here that we find no material evidence of that "intent" which is an essential ingredient of this crime. Indeed, there appears to have been

no "intent" in respect to this taking of any kind. The man and woman, long intimately associated, became engaged in a violent physical struggle. In the course of it, she incidentally and without any formed intent to do so, became possessed of his wrist watch, how she cannot explain. It might have been any other ornament, such as a pin or button, or a part of his attire, a necktie or handkerchief, snatched from his person in the course of their violent struggle. Or she might well have found herself in possession of a lock of his hair, or even a finger or an ear—as sometimes happens. (This might have been mayhem, but not larceny!) The conditions did not admit of the forming of an intent to commit this crime. It was an unconscious culmination unpremeditated and unpurposed.

■ The court of appeals, discussing the elements essential to constitute larceny, quotes from 32 Am. Jur. 928, giving as distinguishing exceptions, where the taking is temporary, "for the purpose of revenging himself upon the owner, of inducing the owner to act in accordance with the wishes of the taker, or of coercing the owner into payment of a *bona fide* claim, or the performance of a legal duty." This text is well supported by annotations in 13 A. L. R. 142.

If any intent whatever may be ascribed to plaintiff in the instant case, the most reasonable conclusion is that her "purpose" was one among those in the foregoing quotation.

■ The court also cites, in this connection, *Fields* v. *State*, 46 Tenn. 524. The writer of that opinion quotes Greenleaf on Ev. Vol. 3, Sec. 157, wherein the distinction is emphasized between takings which constitute larceny and trespasses only. Amony other cases of trespass only mentioned, are where it appears that "the prisoner took

550

the prosecutor's goods openly in his presence, or the presence of other persons, and not by robbery; . . . or took them by mistake arising from his own negligence; these· circumstances would be pregnant evidence to the jury, that the taking was without a felonious intent, and therefore but a mere trespass.'' (Page 527 of 46 Tenn.).

Both of these conditions have direct application here.

■ The primary insistence of petitioner here is that the facts and circumstances evidenced that the defendant Poster acted upon probable cause appearing in good faith to him at the time and that there being no material evidence to the contrary, the trial judge erred in overruling his motion for peremptory instructions; and, specifically, that the court of appeals has disregarded the rule in this jurisdiction which places the burden of proving want of such probable cause on the plaintiff in an action for malicious prosecution. Petitioner's assignment of error reads as follows: ''This being an action for malicious prosecution, it was necessary for the plaintiff to prove that the charge preferred against her was unfounded and that it was made without reasonable or probable cause, and, further, that the defendant in making or instigating the prosecution was actuated by malice. There is no material or substantial evidence in this record showing that the charge preferred in the criminal warrant against the plaintiff was unfounded and that said charge was made without reasonable or probable cause. Hence, defendant's motion for directed verdict should have been sustained and the Court of Appeals erred in failing to so hold.''

■ Conceding the rule to be as stated, the charge of the court, unexcepted to, is in strict conformity to this rule. He told the jury that it was not only the duty of plaintiff to make out her case generally, but that ''it

must be affirmatively shown by the plaitniff that she was prosecuted through malicious motives and without probable cause." It thus plainly appearing that the defendant was given the full benefit of this burden of proof rule on the trial of the case, therefore, observations of the court of appeals challenged by petitioner on this point are not prejudicial, even if subject to the objections made by petitioner, which we do not find it necessary to consider.

Malice is too plainly apparent for dispute. The course of the defendant's conduct before and after the event abundantly evidences malice. And, his undenied efforts to force this woman, being held in jail under his charge, to withdraw her pending suit against him, compromise her rights under his solemn agreement with her and leave the state, as a condition of his release of her from imprisonment, is well-recognized proof of malice. "Malice will be inferred when the object of the prosecution is to enforce payment of a debt." *Morgan* v. *Duffy,* 94 Tenn. 686, 30 S. W. 735, citing authorities. This rule equally applies when the object is to enforce cancellation of a debt. Malicious prosecution is similar in many respects to abuse of process. The following from 1 Am. Jur., p. 186, in a section dealing with abuse of process, has application, by analogy, here: "The most frequent form that the abuse of criminal process takes is that of working upon the fears of the person under arrest for the purpose of extorting from him money or other property, or of compelling him to sign some paper, to give up some claim, or to do some act, in accordance with the wishes of those who have control of the prosecution."

The court of appeals thus satisfactorily disposes of the insistence that the defendant should have been given a directed verdict:

"Reliance is placed upon the holding in *Woolworth Co.* v. *Conners,* 142 Tenn. 678 [222 S. W. 1053], that even though the prosecutor is actuated by malice there can be no recovery for malicious prosecution if 'in the estimation of a rational and dispassionate mind there be probable cause for prosecution.'

"On the trial plaintiff testified that she did not steal defendant's watch and, since she admits taking the watch, we take this as a disclaimer of a felonious intent to permanently deprive defendant of it. As showing malice and lack of probable cause, plaintiff testified that defendant visited her in jail and offered to withdraw the warrant if she would agree to a cash settlement under the contract and leave the state; that he said 'that the reason he put me in was because it was the only thing he could keep me in on.'

"The defendant did not testify and the inference of an ulterior motive in charging plaintiff with larceny to be drawn from the foregoing testimony went to the jury unrefuted. Was the defendant, under such circumstances, entitled to a directed verdict?

"Because of its solicitude for the vindication of public justice the law does not require a prosecutor to risk being able to obtain a conviction. It requires only that the action be instituted upon probable cause to believe the accused guilty and the prosecutor may act upon circumstances as they appeared to him when the prosecution was commenced though it develop that no crime was in fact committed. *Raulston* v. *Jackson,* 1 Sneed 128 [33 Tenn. 128]; *Hall* v. *Hawkins,* 5 Humph. 357 [24 Tenn. 357]; *Woolworth* v. *Connors, supra.*

"In this case the prosecutor did not base his action upon information as to the true facts. He had actual knowledge of all the facts including his former in-

timate relations with plaintiff and the fact that plaintiff got possesseion of the watch in the course of the struggle, a method not commonly employed by a thief. But without waiting to ascertain her intentions or giving her an opportunity to return the watch defendant called the officers and instituted the prosecution which he later withdrew voluntarily. As the facts developed, according to one view of the evidence, she turned the watch over to her attorney on the day it was taken and it was returned to defendant without difficulty. This, coupled with the undenied inference of an ulterior motive for the prosecution, we think made out a *prima facie* case of want of probable cause entitling plaintiff to have her case go to the jury.''

It is not questioned that a defendant in an action for malicious prosecution may escape liability, even though it develops that the accused was not guilty of the offense charged against him, if he can establish that he acted in good faith upon probable cause. This is the rule invoked and applied in *Woolworth* v. *Connors, supra,* cited by the court of appeals. But the facts in the instant case afford little scope for application of that rule. Here, as said by the court of appeals, the prosecutor did not act upon information by which he was misled. He was himself on the scene, an active participant in all the pertinent happenings and facts and circumstances, which we have hereinbefore shown demonstrate that Miss Andrews was not guilty of the charge of larceny.

The generally approved definition of probable cause is ''the existence of such facts and circumstances as would excite in a reasonable mind the belief that the person charged was guilty of the crime for which he was prosecuted.'' Words and Phrases, Michie's Digest, Volume 16, p. 338, citing numerous Tennessee cases. We have hereinbefore demonstrated to our entire satisfac-

tion the absence of any such facts and circumstances in this case. Not only, as we have shown, had there been no larceny in fact committed, but it could not have so appeared to Poster. The rule calls for good faith, an honest purpose to vindicate justice, to bring the guilty to punishment. A mind beclouded by prejudice, passion, hate and malice is not such a ''reasonable mind'' as the rule contemplates.

The good faith of the defendant having been challenged, and there being material evidence to support this challenge, the trial judge properly submitted the facts and circumstances developed by the proof to the jury. Their verdict of guilty was approved by the trial judge and has been approved by the court of appeals. We see no reason to disapprove it.

Reference has been made to the failure of the defendant to take the stand, or offer testimony to refute the damaging story related by plaintiff. He, better than anyone else, knew what purpose animated him, what appeared to him at the time, whether or not he acted on an honest belief. The question being one of his state of mind, he could best state it. It may be suggested that perhaps, after all, the refusal of the defendant to testify is to be commended in that he was unwilling to perjure himself in defense of this money action by testifying that he in fact and in truth, honestly believed that this woman, with whom he had so long lived in such intimacy, intended to steal from him his watch.

The judgment is affirmed.