BANKHEAD et al. v. HALL.—238 S. W. (2d) 522.

Western Division at Jackson. November 8, 1950.

Certiorari denied by Supreme Court, March 9, 1951.

414

Nelson, Norvell, Owens & Floyd, of Memphis, for plaintiffs-in-error.

W. C. Rodgers, of Memphis, for defendant-in-error.

SWEPSTON, J. The transcript is incorrectly styled in this case. The defendants below have appealed, are the Plaintiffs-in-Error. The case should therefore be styled as we have it on the Caption sheet of this opinion. The attention of the Clerk of the Court below should be called to the proper styling of transcripts.

The record reflects that the actors in the following episode are Negroes and the incidents developed by the evidence are quite out of the ordinary.

This appeal in the nature of a writ of error is by the defendants below from an adverse verdict and judgment.

The declaration is in two counts, which are really two separate suits; the first count is for damages for assault and battery with a taxicab; the second count is for damages for malicious prosecution.

To the first count defendants plead the general issue and contributory negligence and specially that defendants admitted that the cab struck plaintiff but claimed self-defense in that plaintiff was alleged to have been threatening defendant Bankhead, the operator of the cab, with a pistol and attempting to rob him; it was admitted that Bankhead was an employee of defendant, Nu-Way Taxi Company, Inc., but denied he was acting on the

business of the company or within the scope of his employment at the time.

To the second count defendants deny they made false accusations against plaintiff but admit they had him arrested and incarcerated; they deny they had him indicted and tried but admit he was acquitted in the Criminal Court; they deny they were motivated by malice.

At the close of all the evidence a verdict was directed in favor of the Taxi Company as to the first count—assault and battery, from which action no appeal was sought.

The case was submitted to the jury who found as to the assault and battery count as follows:

"We the jury find for the plaintiff. And assess one hundred ($100.00) dollars compensatory damages and one thousand ($1,000.00) dollars punitive damages.

"C. B. Stewart

"Foreman",

and as to the malicious prosecution count as follows:

"We the jury find for the plaintiff, and assess damages in the amount of Three hundred and fifty ($350.00) as compensatory damages and assess punitive damages at one thousand ($1,000.00) dollars.

. "C. B. Stewart

"Foreman".

Motions for new trial having been made and overruled and appeal perfected the errors assigned here are in substance in behalf of Bankhead on the first and second counts are (1) no material evidence to support the verdict and error in not directing a verdict in his favor, (2) the verdict is excessive and so excessive as to indicate passion, prejudice and unaccountable caprice, and (3) as to the second count Bankhead assigned the additional error that "the verdict was not definite and

certain in that it did not specify whether it was against one or both defendants''.

The errors assigned by the Taxi Company as to the malicious prosecution court are the same as above.

■ The assignment that the verdict is against the weight of the evidence is not a proper one on appeal for the purpose of testing the correctness of a jury verdict in either of the two aspects of a jury verdict—liability or amount.

We discussed this matter in the recent case of Board of Mayor etc. v. Moore, Tenn. App., S. W. (2d) 410, and need not repeat it here.

■ The assignments raising the question whether there is material evidence to support the verdict on the first count, assault and battery, must be overruled. The brief of plaintiff in error omits any discussion in support of these assignments and we find ample evidence to support the verdict. It would be unnecessary to discuss the evidence in support of the first count except for the fact that it is quite germane to the same assignments directed at the verdict on the malicious prosecution count.

There is no dispute as to what occurred up to a certain point. Bankhead had four passengers in the cab when he was flagged on Beal Street by Hall who there entered the cab. Two of the passengers left the cab shortly afterwards and the other two rode up to Hall's destination, some distance north of Main Street and Jackson Avenue where the altercation later arose.

Bankhead agreed to and did wait for Hall to fetch his girl friend Willie Mae Small and then drove them with the other two passengers back down to Main and Jackson,

Bankhead and Hall then went into a cafe to get change for a five dollar bill and Hall paid Bankhead $1.50 fare and a five cent tip.

At this juncture the dispute arose. Bankhead claimed Hall owed $1.95. Hall claimed he made inquiry as to the fare both when he first entered the cab and before he and his girl entered it and that Bankhead fixed it at 75c each time.

In any event another cab of the same company and driven by Bennett arrived on the scene and Hall says he thought these two cab drivers were going to gang him, so he was about to pay the additional 45c but that suddenly both cabs whisked away. In the meantime his "girl friend" had become frightened and left. Hall says he then went east in an effort to get to his home at 129 Jackson but before he reached it the cab appeared again and slowed down, so that he was frightened and got under a porch until he thought the cab was gone. He then emerged from hiding and was attempting to cross from the north side of Jackson to the south side where his girl was waiting for him, when she yelled to him to look out and just then the cab headed east on Jackson, which is a one-way street west, came up behind him, ran over him and left the scene without stopping.

Bankhead's version is that when the dispute about the fare arose, Hall drew a pistol on him and attempted to rob him, that both cabs pulled away in a hurry, that he made a U-turn on Main back north, went west on Jackson a short distance, made a U-turn back east on Jackson blowing his horn all along to attract the police and when he had gotten a short distance east of Main on Jackson, Hall suddenly ran out in front of the cab brandishing his pistol and pointing it toward the cab.

He admits he deliberately ran over Hall and did not stop; he claims self-defense.

Hall's theory is supported by ample evidence—particularly by the testimony of his girl and by a disinterested witness, James Wallace, who saw the cab run over Hall and who saw no pistol in his hand and who contradicts Bankhead about his claim of blowing his horn.

There was simply a conflict in the evidence and the jury believed Hall and his witnesses. It requires little discernment to see why the jury did not believe Bankhead. All that, however, was within the province of the jury alone and, as intimated, we have touched upon it because of its relevancy to the question of lack of probable cause and malice under the second count.

As a sequel to that incident Hall was arrested a few days later, tried in the City Court and bound over to the State on a charge of robbery and carrying a pistol. He was tried in the Criminal Court only on the pistol charge and acquitted and was released after languishing in jail for over six weeks.

As said above, defendants plead the general issue and justification, which though inconsistent, may be done under Code Section 8759 and cases cited thereunder. In their joint special plea they admitted they had Hall arrested and incarcerated, but they denied they had him indicted and tried and denied they acted without probable cause and with malice. This left the burden of proof on Hall to show malice and want of probable cause under the general issue. F. W. Woolworth Co. v. Connors, 142 Tenn. 678, 222 S. W. 1053; Bry-Block Mercantile Co. v. Procter, 13 Tenn. App. 45; Poster v. Andrews, 183 Tenn. 544, 194 S. W. (2d) 337.

Counsel for Hall relies upon a statement in Wheeler v. Nesbitt, 24 How. 544, 65 U. S. 544, 16 L. Ed. 765, 769, that plaintiff must prove lack of probable cause by·some affirmative evidence, ''unless the defendant dispense with such proof by pleading singly the truth of the several facts in the charge. Morris v. Corson, 7 Cow. N. Y., 281''.

Such a statement could be applicable only to the special plea herein, but not to the general issue.

Defendants have not plead singly the truth of the charge, but have plead it in addition to the general issue.

■ In such a situation, if the defendant prove the truth of the charges, that is a complete defense. If defendant fail on this special plea, then the plaintiff must succeed in proving as a part of his case in chief, malice and want of probable cause. See discussion in 38 C. J. 471-472, sections 135 and 136, 54 C. J. S., Malicious Prosecution, Section 81.

There is ample evidence to show that Bankhead acted with malice and without probable cause. The police officer testified that upon the complaint of Bankhead that Hall had attempted to hold him up with a pistol they investigated the matter and arrested Hall. Bankhead admitted that he appeared as a witness against Hall in City Court, before the Grand Jury and in the Criminal Court.

■ The necessary effect of the jury's verdict is that Bankhead's charges were false and were knowingly false throughout all proceedings. Therefore they were necessarily made without probable cause and with malice.

With respect to Bankhead it matters not that other witnesses testified in support of his charges, because he was not acting on information furnished by others but

upon his own alleged personal knowledge; the jury simply did not believe any of them.

We hold, therefore, that there was material evidence to support the verdict against Bankhead and overrule the assignments predicated on this point with respect to Bankhead.

The corporate defendant, however, is in an entirely different situation from that of Bankhead, its employee, with reference to evidence of malice and want of probable cause.

Pretermitting any discussion of respondeat superior or of agency and assuming that Nu-Way Taxi Company did participate directly in bringing about the arrest and incarceration of Hall, there is, other than the admission in its plea, no further evidence of its participation in subsequent events, but assuming the contrary, the record is in this plight.

There is no evidence whatever tending to show that the corporate officials knew or should have known that Bankhead's charges were false. They reported the matter to the Police after Bankhead had reported it to the person in charge of the cab office.

The Police in the course of their investigation obtained a signed statement from Hall's "girl friend" that Hall had pulled his pistol on Bankhead, although she testified to the contrary in the City Court and in the instant case she expressly repudiated the statement and claimed it was obtained under duress. Bankhead furnished the Police with the names of other witnesses to Hall's having pulled the pistol and three of them, Bennett, the other cab driver for the defendant corporation, and the two passengers in Bankhead's cab, Evans and Simmons, so testified in the instant suit.

The police officer, Lewis, testified without contradiction that Hall was arrested on the faith of this information.

There is no evidence tending to show that the corporation had any information that Bankhead and the others were not telling the truth, or that, if an investigation independent of that of the Police had been made, the corporation would or could have learned the truth, or that the true facts were available. There is, therefore, no basis for the application of the rule announced in City v. Miller, 1 Tenn. App. 1, 9, that when the *facts are easily available,* a failure to make inquiry before instituting a criminal prosecution constitutes want of probable cause, and that the failure of a person *having received information* tending to show the commission of a crime to make such further inquiry and investigation as an ordinarily prudent person would make under the same circumstances before commencing a prosecution.

There is no dispute in the evidence in respect to the foregoing facts showing not only that the corporation had no knowledge of facts to put them on inquiry but also that they would not have learned the truth by an independent investigation.

▮ In such a situation the rule applied in F. W. Woolworth Co. v. Connors, supra, is applicable: "The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it are true and existed is a matter of fact, but whether, supposing them to be true, they amount to a probable cause, is a question of law". [142 Tenn. 678, 222 S. W. 1055.]

▮ There being no dispute as to facts it became the duty of the court to determine whether or not they amounted in law to probable cause.

■ We are of opinion that the plaintiff has failed to make a prima facie case of want of probable cause and that his action against the corporation must fail.

■ It is argued in his brief that the failure of any of the corporate officers to testify in this case warrants an inference of bad faith and want of probable cause. That would only be true after the plaintiff had made a prima facie showing of want of probable cause, as in Poster v. Andrews, supra, but we take it to be a well settled rule that in any case the plaintiff must make a prima facie case, else defendant need offer no evidence and is entitled to a peremptory instruction in his favor. The rule is so stated in Wheeler v. Nesbitt, 65 U. S. 550, supra, with reference to suits for malicious prosecution. See also Davis v. Newsome Auto Tire & Vulcanizing Co., 141 Tenn. 527, 213 S. W. 914; Pickard v. Berryman, 24 Tenn. App. 263, 142 S. W. (2d) 764; The Vogue, Inc., v. Cox, 28 Tenn. App. 344, 190 S. W. (2d) 307.

The assignment as to no material evidence and the failure of the Court to direct a verdict in favor of the corporation on the second count is accordingly sustained and the suit is dismissed as to it.

We find no merit in the assignment that the verdict on the second count is not definite as to whether it is against one or both defendants.

In Wilson v. Nance, 30 Tenn. 189, a verdict was held valid where it recited the names of all of several defendants except one.

"This, in legal effect, is a valid judgment against all who are regularly defendants to the suit; and who are such, is a matter to be ascertained by reference to the process, pleadings and proceedings in the suit". 30 Tenn. at page 191.

424

The above case is approved in Robertson v. Winchester, 85 Tenn. 171, 183, 1 S. W. 781. Counsel for defendants below cites Railroad Co. v. Fort, 112 Tenn. 432, 460, 80 S. W. 429, holding that verdicts must be certain in that nothing be left to the exercise of discretion by the trial judge. Held, the calculation of interest called for in the verdict but not calculated may be calculated and inserted in the judgment by the judge; calculation of interest is not a judicial but a mere clerical act.

We do not see its relevancy here.

 There were two defendants in the case submitted to the jury on the second count and only one on the first count after the directed verdict for the corporation on the first. The verdict was necessarily against Bankhead only on the first count and against both defendants on the second.

 The maxim "ut res valeat quam magis pereat" applies generally even if the verdict were ambiguous.

The assignment is overruled.

The remaining assignment complains of excessiveness of the verdict and that it was so excessive as to indicate passion, prejudice, etc.

Plaintiff was arrested on his job at a lumber company where he was making $34.60 per week, was in jail a little more than six weeks, lost his job and had the expense of employing counsel to defend him through the criminal court and testified that he was not able after his acquittal to work on account of injuries received when run over by the cab. That all relates to actual damages.

 Considering the humiliation and the fear of conviction and imprisonment suffered by plaintiff and the wanton and cold blooded assault and battery and the perfidious conduct of Bankhead in bringing about and

pursuing the prosecution, we think the punitive damages awarded are small enough.

It can hardly be supposed that the jury was influenced by the fact that one defendant was a corporation, because they fixed the punitive damages in the same amount on both counts, after the corporation had been dismissed under the first count.

A judgment will be entered here against Bankhead in the same amount as below with interest and costs, and a judgment of dismissal of the corporation.

Anderson, P. J., and Baptist, J., concur.