**Dr. V. J. DEVINE, Appellant and Cross-Appellee,**

v.

**James S. PATTESON, Jr., Appellee and Cross-Appellant.**

Nos. 12877, 12878.

United States Court of Appeals
Sixth Circuit.

March 29, 1957.

Charles V. Garnett, Kansas City, Mo. (Robert M. Murray, Kansas City, Mo., Carlton N. Wilkes, James T. Haynes, Memphis, Tenn., on the brief), for V. J. Devine.

John S. Porter, Memphis, Tenn. (Burch, Porter & Johnson, Memphis, Tenn., on the brief), for James S. Patteson, Jr.

Before ALLEN, STEPHENS * and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

These appeals arise out of a complaint filed by Dr. V. J. Devine, plaintiff-appellant and cross-appellee, hereinafter called plaintiff, against James S. Patteson, Jr., defendant-appellee and cross-appellant, hereinafter called defendant, praying for damages for malicious prosecution. Plaintiff and William F. Snakard had been indicted February 16, 1954, for use of the mails in interstate transportation and use of instruments of transportation and communication in interstate commerce in an alleged conspiracy to defraud defendant and others in violation of Title 18 U.S.C. §§ 371, 1341, and 15 U.S.C. §§ 77q(a) (1) and 77e(a). The transactions covered by the indictment dealt with negotiations and agreements as to oil properties in Texas and as to a gasoline plant in Illinois. They involved witnesses and events in three states. The trial consumed almost two weeks. Plaintiff and Snakard were acquitted. Later plaintiff filed this action for damages against defendant, who had been prosecuting witness in the indictment.

The complaint averred that defendant maliciously, intentionally, and without just cause stated to the United States District Attorney that plaintiff had violated certain laws of the United States. At the trial of the malicious prosecution case plaintiff testified that the actual expense to which he was personally subjected in contesting the prosecution, consisting mainly of attorneys' fees and traveling expenses, amounted to over $19,000. This was not disputed. Defendant did not take the stand and no evidence was introduced to the contrary. The jury returned a verdict for plaintiff, allowing compensatory damages in the sum of $500.00 and punitive damages in the sum of $1.00.

The complicated indictment contained 8 counts, all based upon transactions alleged to be fraudulent, and charged numerous overt acts and other transactions which need not be set forth. Snakard, plaintiff, and others unknown, hereinafter called the Devine group, were charged with having misrepresented in 1950 and 1951, in pursuance of an unlawful conspiracy, their ownership of certain assets which were proposed by the De-

* Albert Lee Stephens of the Ninth Circuit.

vine group to be transferred to a joint venture for the operation of the mutual benefit of the Devine group and defendant and others, hereinafter called the Patteson group.

The evidence in the instant case was in conflict upon the principal claims of misrepresentation. We do not discuss them because the jury found for plaintiff and necessarily found that the misrepresentations alleged had not been made and the fraudulent acts charged had not been performed.

Plaintiff's appeal attacks only the amount of the verdict. He contends that, as the jury found defendant liable for malicious prosecution, it was required to consider the elements of damage shown by the uncontradicted testimony as to the extensive legal and traveling expenses incurred in the criminal prosecution. Plaintiff contends that the jury's failure to consider the uncontradicted evidence is so inconsistent with its verdict on liability as to require reversal and a new trial upon that feature of the case as a matter of law.

■■■ Defendant's cross-appeal is based principally upon the ground that the returning by the grand jury of an indictment against plaintiff and Snakard constituted prima facie evidence of probable cause, which was in no way rebutted in the instant trial; that there was no evidence from which the jury could rightly conclude that the indictment was procured by fraud, false testimony, concealment of material facts, malice, lack of good faith, or other improper contrivance on the part of defendant; and that the motion for directed verdict or for judgment *non obstante* should have been sustained. If this contention is correct, we do not reach the question of damages and therefore we first consider whether the District Court erred in submitting the issue of probable cause to the jury. The existence of probable cause is in general a mixed question of law and fact. Cf. F. W. Woolworth Company v. Connors, 142 Tenn. 678, 222 S.W. 1053, 1054. The " 'honest and reasonable belief of the party commencing the prose-

cution' " is a material element in the determination of probable cause. F. W. Woolworth Company v. Connors, supra. The advice of the District Attorney must be honestly sought in order that the defense of probable cause may be sustained. Cooper v. Flemming, 114 Tenn. 40, 84 S.W. 801, 68 L.R.A. 849; Nashville Union Stockyards, Inc., v. Grissim, 13 Tenn. App. 115.

The District Court charged the jury fully upon the applicable law of probable cause and no question is raised here as to the correctness of the charge. He instructed the jury that:

"Where it appears that there was probable cause, that is, reasonable cause to believe the plaintiff had been guilty of the crimes with which he was charged, or any one of them, for the institution of the original criminal proceedings, then same would be an absolute defense in this action. * * *

" * * * if you find from the proof that the defendant, at the time the prosecution herein was instituted, acted upon such state of facts known to him as would induce a belief in the mind of a prudent and discreet man that an offense had been committed by the plaintiff Devine, he would not be liable."

These instructions were certainly favorable to defendant. In view of these and other portions of the charge it is evident that the jury found that the defendant in pressing the criminal charge did not act in good faith, nor under an "honest" belief in plaintiff's guilt. If there was evidence to support such a finding the District Court was required to submit the question to the jury.

Defendant stresses the fact that prior to the indictment the United States postal inspector made an extensive investigation in locations in Arkansas, Tennessee, and various cities of Texas, interviewing numerous persons before the indictment was returned. The Securities and Exchange Commission and the FBI at certain points conferred with the postal department. However, it was shown with-

out contradiction that, while the alleged fraudulent acts and representations of the Devine group took place around December, 1950, and January, 1951, by agreement of the parties early in 1951 Snakard was removed as trustee of Padre Petroleum Company, the association formed December 15, 1950, to operate the properties involved. Around March 20, 1951, the Patteson group was given full authority to control future Padre operations, and the Devine group turned over to the Patteson group a 29% interest in Padre. In May, 1951, defendant's control of Padre was extended. It was not shown in the instant case that the minutes of the meetings held in connection with these transactions suggest that plaintiff and Snakard had conspired to defraud the investors.

In July, 1951, defendant and Magnussen held Snakard in defendant's hotel room at Brownwood, Texas, under threats of arrest and prosecution for the purpose of securing a further 15% from the Devine group. It is not denied that about this time defendant told plaintiff that if plaintiff or his group did not turn over the 15% interest plaintiff would be prosecuted and defendant would see that it got "in every paper in the United States." In defendant's testimony given in the criminal case, introduced in the instant trial, defendant admitted that he forced Snakard to call his brother and plaintiff and tell them that unless they reduced their interest to 1% "we would prosecute him for fraud." Defendant said that "We certainly told him that if he did not put these telephone calls through, we were going to start prosecution * * * we just told them that either they were going to reduce it [their interest] or we would start prosecution." He said, "My group * * * got Bill Snakard down in Brownwood, Texas, and extracted from him his fifteen per cent." The minutes of July 17, 1951, show that the 15% interest was taken from the Devine group. Defendant, who on June 1, 1951, had secured a mortgage of $45,000 covering all the Padre properties, later foreclosed the mortgage and became sole owner. Padre's financial report of February 29, 1952, shows an ownership equity in Padre of $345,809.96. This testimony was not contradicted. Defendant did not take the stand in the malicious prosecution case.

Since defendant for a considerable period, as shown by the uncontradicted testimony, accepted the activities of plaintiff and Snakard in Padre's affairs without any claim of fraud and later extorted from Snakard and plaintiff practically their entire interest by threats of prosecution, the inference of good faith and probable cause arising from the indictment was rebutted. The question whether defendant acted in good faith in pressing the indictment in 1954, so long after the civil liability of plaintiff, if any, at least in large degree, had been settled, became a question of fact. Under Tennessee law defendant's failure to testify in the malicious prosecution case warranted an inference of bad faith and want of probable cause. Bankhead v. Hall, 34 Tenn.App. 412, 238 S.W.2d 522, 527. The District Court did not err in submitting this issue to the jury.

Defendant raises a second question which we deem it unnecessary to discuss in detail. He maintains that it is shown by undisputed proof that the substance of the charges in the indictment is true and therefore contends that the judgment against him should be reversed under the doctrine of Bry-Block Mercantile Company, Inc., v. Proctor, 10 Tenn.App. 651. However, the premise of this contention is lacking. The proof claimed to establish the substance of the charges in the indictment was not undisputed. The material charges of the case were controverted and the jury, in fact, found that they were not true. The cited decision has no application.

We conclude that defendant's cross-appeal has no merit.

As to plaintiff's appeal, in his contention that the verdict must be set aside for inadequacy of the amount awarded plaintiff relies upon a decision of this

court, Reisberg v. Walters, 111 F.2d 595. We there held that the award of a jury in a personal injury case arising out of an automobile accident was grossly inadequate if it failed to consider essential elements of damages in an amount conceded to have been suffered, and demonstrated that the jury had failed to abide by the instruction of the court. The Reisberg decision reaffirmed the doctrine of Pugh v. Bluff City Excursion Company, 6 Cir., 177 F. 399, 401, which held that in case of inadequacy of verdict such as here presented it was error of law to overrule a motion for new trial. Cf. Miller v. Maryland Casualty Company, 2 Cir., 40 F.2d 463. In this case Judge Learned Hand, speaking for the court, declared that, while courts will rarely review an award for damages, orders refusing new trials because of the amount of the verdict have been reversed in cases where the jury did not attempt to appraise the plaintiff's loss at all and where the verdict was less than the amount of undisputed loss. Cf. Spero-Nelson v. Brown, 6 Cir., 175 F.2d 86, in which the doctrine of the Reisberg case, supra, was specifically approved.

Defendant contends that since the testimony as to legal expense was given by plaintiff only the jury was authorized to disregard it. But it is uncontradicted that plaintiff made preliminary legal investigations in three states, employed numerous lawyers in all of these states, and vigorously contested the criminal prosecution lasting almost two weeks. These undisputed facts constitute evidence of expense in addition to plaintiff's statements.

■ Since the verdict was less than the amount of the loss shown and not disputed, the motion for new trial should have been granted. We see no essential difference between physical damage suffered in a personal injury case and professional and psychological damage suffered in the trial of a criminal case. While there was controversy as to defendant's liability, there was no controversy as to the necessity of plaintiff's incurring the expenses listed, nor as to the fact that they were actually incurred. The award of $500 was around ¹⁄₄₀ of the actual and specific damages proved and nothing was allowed for the undisputed injury shown to have been suffered by plaintiff in his professional reputation, standing, and loss of practice.

■ While in general the granting of a new trial is a matter of discretion with the court, it is not so when the verdict is inconsistent on its face. Pugh v. Bluff City Excursion Company, supra. The jury found plaintiff was entitled to recover. In view of the undisputed evidence as to expense caused by the wrongful prosecution it is evident that the jury did not comply with the instructions of the court.

■ As to punitive damages the award is peculiarly within the discretion of the jury. We cannot say that the discretion was abused, and we do not set aside the verdict of $1.00. Davis v. Farris, 1 Tenn.App. 144; Hostettler v. Vaden, 13 Tenn.App. 454, 123 A.L.R. 1130.

■ The District Court erred in not granting a new trial limited to the question of compensatory damages. Federal Rules of Civil Procedure, rule 59(a), 28 U.S.C.; Chesevski v. Strawbridge & Clothier, D.C., 25 F.Supp. 325; Barron and Holtzoff, Federal Practice and Procedure, Vol. 3, § 1304, and § 1307, which reads as follows:

"If issues are framed for the jury and the issue as to which a new trial is required is separate from all other issues, and the error requiring a new trial does not affect the determination of any other issue, the scope of the new trial may be limited to the single issue. Thus new trials have been limited to the issue of damages. * * *"

A majority of the court thinks it would be unjust to a plaintiff who has proved to the satisfaction of the jury that he was subjected to a malicious prosecution to have to retry the question, not only of

damages, but also of liability. If the issues are as we think, separate and distinct, conceivably plaintiff might be compelled to pay a second very large amount for legal expenses in order to collect the amounts expended in the first suit. A majority of the court considers that the issue of damages here is entirely separate from other issues presented. If the issue of compensatory damages is retried defendant will have a second opportunity to contest the claimed legal and other expenses which in the instant case he did not contradict. This is not unjust to him nor does it in any way affect the question of liability. Whether plaintiff spent $500, $5,000, or $19,000 in fighting the indictment has no bearing upon whether defendant maliciously and without probable cause secured plaintiff's indictment. The amount of the expense has no probative connection with the issue of liability, hence the issue may be retried singly.

 We think this conclusion is in accord with the applicable law. While a new trial should cover the issue of liability as well as of damages if these issues are so interwoven as to be inseparable, we think this case does not call for the application of that rule. The majority of the cases cited in the dissenting opinion are personal injury cases. In this type of controversy, obviously the imponderables arising from cases which present highly emotional features are omnipresent. In a number of the cases cited there was an issue, not only of negligence but of contributory negligence. Southern Railway Company v. Madden, 4 Cir., 235 F.2d 198; Bass v. Dehner, D.C., 21 F.Supp. 567; Grant Company v. Tanner, 170 Tenn. 451, 95 S.W.2d 926. The Fourth Circuit in Southern Railway Company v. Neese, 216 F.2d 772, held that the issues of damage and liability were separate and distinct. This case was reversed by the Supreme Court, 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60. However, in both decisions, that of the Circuit Court and that of the Supreme Court, the verdict as to liability was sustained.

In the Madden case, as to the issue of liability the Fourth Circuit found that prejudicial error existed in the admission of testimony and in the charge of the court. Quoting from and following an opinion by Chief Justice Rugg in Simmons v. Fish, 210 Mass. 563, 97 N.E. 102, the court held in effect that it was obvious in the Madden case that no jury had decided the issue of liability against the railway company on "justifiable grounds."

Here defendant's contention as to liability is that the undisputed facts demonstrated the existence of probable cause. This issue was correctly submitted to the jury, which found in favor of the plaintiff and the finding is supported by the record. Reversible error exists only in the amount of the verdict. Chesevski v. Strawbridge & Clothier, supra; Dodson v. Raker, D.C., 1 F.R.D. 368.

The judgment as to compensatory damages is set aside and a new trial is ordered upon that issue only. The judgment in all other respects is affirmed.

MILLER, Circuit Judge (dissenting).

I am in agreement with the statement in the majority opinion of the general rule that under certain conditions where the issue of damages is entirely separate from the issue of liability, a new trial may be granted limited to the issue of damages only. This Court has so held. Thompson v. Camp, 6 Cir., 167 F.2d 733. But as stated in that case, the court should proceed with caution, with a careful regard for the rights of both parties, and only in those cases where it is plain that the error which has crept into one element of the verdict did not in any way affect the determination of any other issue. The error in that case was an error in the instructions dealing with the question of damages and had no bearing on the issue of liability. In my opinion, the rule is not applicable to the present case.

It is, of course, true as stated in the majority opinion, that as an abstract question of law whether the plaintiff spent $500, $5,000 or $19,000 in fighting

the indictment has no bearing upon whether defendant maliciously and without probable cause secured plaintiff's indictment. This would be a complete answer to the issue here involved if the jury followed this principle of law in reaching its verdict. It seems to me that the jury not only refused to follow the law and the evidence on the question of damages, which is the basis of the ruling that a new trial should be granted, but also at the same time refused to follow this principle of law which requires that questions of liability and damage be independently determined. I do not think we can reasonably say with any degree of certainty that the jury refused to follow the law on the question of damages but did follow the law on the question of liability. Verdicts which are obviously compromise verdicts show rather conclusively that as a practical matter, and in disregard of the rule of law to the contrary, the questions of the amount of damages and determination of liability are closely interwoven. This appears to me to be such a case.

It seems clear to me that this was a compromise verdict, that most of the jurors in this case were not in favor of returning a verdict for the plaintiff, and would not have agreed to a verdict for the plaintiff if it would result in awarding to him any substantial amount. If the jury had unanimously been in favor of a verdict for the plaintiff, the amount of the verdict would undoubtedly have been many times greater. The evidence to sustain such an amount was undisputed. There was no reason appearing in the record why as reasonable jurors they would not have followed the evidence on this issue *if* they were satisfied that the defendant wronged the plaintiff as claimed. To me, the obvious answer as to why the verdict was only $500 is not that they failed or refused to follow the evidence on the question of damages, but that most of the jurors were not satisfied that there should be a verdict in any amount against the defendant. With a few jurors strongly favoring a verdict in

a substantial amount, and in order to reach a verdict and avoid a new trial those jurors opposed to a verdict for the plaintiff agreed to return a verdict for him if it was limited to a relatively small amount. This appears to me to be a more logical analysis of the verdict than to say that the twelve jurors were unanimously in favor of a verdict for the plaintiff, but arbitrarily refused to follow the law and evidence on the question of damages. In the present case it is at least probable that the questions of liability and the amount of damages were, as a practical matter, so closely interwoven that if a new trial is to be granted, it should be granted in its entirety and not limited to the question of damages only. Schuerholz v. Roach, 4 Cir., 58 F.2d 32, 34, certiorari denied 287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541. Southern Railway Co. v. Madden, 4 Cir., 235 F.2d 198, 204. Unless it *clearly* appears that the issue of damages was distinct and separable from the issue of liability, a new trial on the issue of damages alone should not be granted. Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188; Thompson v. Camp, supra, 6 Cir., 167 F.2d 733, 734.

The point is well illustrated by the case of Bass v. Dehner, D.C., 21 F.Supp. 567, where the Court granted a new trial because the damages were inadequate but refused to limit the new trial to the question of damages only. On the retrial the jury returned a verdict for the defendant. Bass v. Dehner, 10 Cir., 103 F.2d 28, certiorari denied 308 U.S. 580, 60 S.Ct. 100, 84 L.Ed. 486, rehearing denied 308 U.S. 635, 60 S.Ct. 136, 84 L.Ed. 528.

The question usually arises in tort actions, although it is not so restricted. Gasoline Products Co. v. Champlin Refining Co., supra, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188. The present action is a tort action. See also: W. T. Grant Co. v. Tanner, 170 Tenn. 451, 95 S.W.2d 926; Simmons v. Fish, 210 Mass. 563, 97 N.E. 102; Leipert v. Honold, 39 Cal.2d 462, 247 P.2d 324, 29 A.L.R.2d 1185; Johnson v. Sgourakis, 20 N.J.

Super. 77, 89 A.2d 273; Parker v. Allen, 171 Kan. 360, 233 P.2d 514; Flaugh v. Egan Chevrolet, Inc., 202 Minn. 615, 279 N.W. 582; Reay v. Beasley, 49 Ariz. 362, 66 P.2d 1043; Murray v. Krenz, 94 Conn. 503, 109 A. 859, 861.

I do not believe the ruling in Southern Railway Company v. Neese, 4 Cir., 216 F.2d 772, cited in the majority opinion, should be relied upon. As noted in the majority opinion this ruling of the Court of Appeals was subsequently reversed by the Supreme Court, 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60. Also, the same Court of Appeals later held that where it is clear that an inadequate verdict is a compromise verdict, the new trial should not be limited to the question of damages alone. Southern Railway Company v. Madden, supra, 4 Cir., 235 F.2d 198, 204.

I think the statement of the Supreme Court in Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603, is directly applicable to this case and states the rule which we should follow. The Court said: "Where the verdict returned by a jury is palpably and grossly inadequate or excessive, it should not be permitted to stand; but, in that event, both parties remain entitled, *as they were entitled in the first instance,* to have a jury properly determine the *question of liability and* the extent of the injury by an assessment of damages." (Emphasis added.) As pointed out in the majority opinion, this court has in two cases held that a new trial should have been granted by reason of inadequacy of damages. Pugh v. Bluff City Excursion Co., 6 Cir., 177 F. 399; Reisberg v. Walters, 6 Cir., 111 F.2d 595. Although the question is not discussed in the opinions, in neither of the cases was the new trial limited to the question of damages. In the Reisberg case we referred to Dimick v. Schiedt, supra, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, as being one of the cases pointing the way to our ruling in that case, and quoted in the opinion the foregoing statement of the Supreme Court.