## ABBOTT v. LEDBETTER.

Court En Banc.     August 8 1925.

Certiorari denied December 19, 1925.

1. **Appeal and error. Where court's charge is not in the record it is presumed correct.**

Instructions of court will be presumed without error, where not in the record on appeal.

2. **Malicious prosecution. "Probable cause" defined.**

"Probable cause" is existence of such facts and circumstances as would naturally excite in mind of reasonable man belief that accused was guilty of crime for which prosecuted.

3. **Malicious prosecution. Probable cause for prosecution is mixed question of law and fact.**

Probable cause for prosecution is mixed question of law and fact; whether facts and circumstances constitute probable cause being question of law for the court, and whether facts exist being for the jury.

4. **Malicious prosecution. Question for jury when facts are disputed.**

Where question of probable cause depends on disputed question of fact and inferences therefrom, it is for jury to weigh evidence and determine facts, under proper instructions as to what facts constitute probable cause, or the court may require special findings of fact as to such issue and then determine whether facts found constitute probable cause.

5. **Appeal and error. Evidence construed most favorably to support verdict.**

In malicious prosecution suit on appeal the court will take as true existence of all facts and inferences which evidence tends to show as constituting probable cause.

6. **Abduction. Force or fraud not necessary to constitute offense of enticing female from parent's home.**

Violation of Shannon's Code, Section 6462, denouncing offense of taking female for prostitution, is not question of force, distance, or time; the vital test being whether female chaste, and virtuous as to all except defendant, was taken by force, fraud, or persuasion beyond care and control of her parents, for prostitution or concubinage.

7. **Malicious prosecution. Evidence held to show probable cause as matter of law.**

In suit for malicious prosecution, evidence that defendant had been informed that plaintiff, a married man separated from his wife, had been endeavoring to persuade defendant's 16 year old daughter to run away with him, and that defendant had gone to plaintiff's home to persuade his daughter to return, and that plaintiff had fully communicated all facts to Assistant Attorney General before swearing out warrant, held to show, as a matter of law, probable cause for prosecution of plaintiff for violation of Shannon's Code, Section 6462.

8. **Malicious prosecution. Evidence held to sustain jury's finding of probable cause.**

Where defendant had been having trouble with his 16 year old daughter and had been informed that she was about to run away with plaintiff, a married man, who was separated from his wife, Held sufficient to warrant jury finding that he had acted without malice in prosecuting plaintiff for violation of Shannon's Code, Section 6462.

9. **Malicious prosecution. Malice may be inferred by the jury from want of probable cause.**

Malice may be inferred by the jury from the want of probable cause, but the law makes no such presumption. It is a mere inference of fact which the jury may or may not make.

10. **Malicious prosecution. Evidence held sufficient to sustain verdict.**

Evidence that defendant, in prosecuting plaintiff had acted in the honest belief that the offense had been committed and without malice, held, to sustain verdict for defendant, even if the evidence was insufficient to show probable cause.

Appeal in Error from Circuit Court, Blount County; Hon. Sam C. Brown, Judge.

Affirmed.

Drinnen & Sims, of Maryville, for Ted Abbott.

Dunn & Jackson, of Maryville, for M. M. Ledbetter.

THOMPSON, J. .This is a suit for malicious prosecution in-stituted in the circuit court of Blount county by Ted Abbott against the defendant, M. M. Ledbetter, seeking to recover the sum of $5,000 damages. At the trial the jury returned a verdict in favor of the defendant below, and the plaintiff has appealed to this court and assigned errors.

Material allegations of the declaration are as follows:

"The defendant on or about the 28th day of November, 1923, appeared before A. C. Brakebill, a justice of the peace of Blount county, Tenn., and then and there falsely and maliciously, and without reasonable or probable cause, charged that the plaintiff in the county aforesaid, on the 25th day of November, 1923, did unlawfully willfully take and con-ceal Lela Ledbetter, a female under the age of 18 years, with out the parents' consent, for the purpose of prostitution, and upon said charge the defendant then and there falsely and maliciously, and without any probable or reasonable cause whatever, caused, prayed for, and procured said A. C. Brake-bill, as such justice of the peace, to issue a state warrant for the arrest of the plaintiff; and the defendant afterwards, on or about the 29th day of November, 1923, wrongfully, maliciously, and unjustly, and without reasonable or probable cause what-ever, caused and procured one J. L. Allison, who was a deputy sheriff of said county, to arrest and imprison the plaintiff on said warrant, and caused the plaintiff to be committed to the jail of said county to remain until the next day, and the plaintiff was placed in said jail and remained there a prisoner until the next day. And on said day, to-wit, November 30, 1923, the defendant, M. M. Ledbetter, who was prosecutor in said false and malicious charge against plaintiff, and before the time reset for hearing of said case on said date, appeared before said A. C. Brakebill, as such justice of the peace, and asked that said case against this plaintiff be dismissed, and said case was by said justice of the peace dismissed, and the plaintiff, who was the defendant in same, was released, acquitted, and discharged, and the defendant has abandoned said prosecution against the plaintiff, and the same is wholly ended. In said false and malicious prosecution there was no evidence that such crime had been committed, nor any reasonable or probable cause for such charge against the plaintiff, and said prosecutor in same was taxed with the costs."

The defendant filed a plea of not guilty and the following special plea:

"The defendant, M. M. Ledbetter, for further plea, not waiving the foregoing plea, says that the plaintiff ought not to

have and maintain his action against defendant, because he says that at the time he procured a warrant from A. C. Brakebill, a justice of the peace of Blount county, Tenn., for the arrest of said Ted Abbott, on a charge of having taken his daughter, Lela Ledbetter, away from defendant for the purpose of prostitution, he was in possession of evidence sufficient to consitute a probable cause to believe the said Ted Abbott guilty of the alleged offense, which facts he submitted to his counsel, who advised him that the so stated evidence would warrant conviction for the alleged offense.

"Wherefore the defendant prays to be dismissed with reasonable costs."

As stated, the jury returned a verdict in favor of the defendant, and the plaintiff filed a motion for a new trial and assigned the following grounds:

"(1) There was no evidence to support the verdict of the jury.

"(2) The defendant obtained the state warrant, and had plaintiff put in jail without any evidence of his guilt, and made no inquiry as to his guilt or innocence.

"(3) The defendant could not reply upon the advice of counsel to excuse him in swearing out said state warrant and having plaintiff arrested. He did not obtain the facts in reference to the guilt or innocence of Ted Abbott charged in said state warrent to present to counsel."

This motion was overruled, and the plaintiff below has assigned errors in this court, based on the action of the trial court in overruling the motion for a new trial, and errors assigned in this court are identical with the grounds of the motion for a new trial.

No question was made in the court below or in this court upon the correctness of the charge of the trial court to the jury, and in fact the charge is not in the record. We, of course, persume that it was entirely correct.

There was no dispute, and it was not questioned by the defendant that the defendant swore out the warrant on November 28, 1923; that the plaintiff was arrested and stayed in jail over night; and that the defendant, of his own accord, dismissed the warrant, and the plaintiff was finally discharged on November 30, 1923. The case, therefore, hinges entirely upon the questions of probable cause, including the defense of advice of counsel, and malice.

Probable cause is the existence of such facts and circumstances as would excite in a reasonable mind the belief that the person charged was guilty of the crime for which he was prosecuted; that is, acting upon the facts within the knowledge of the prosecutor, if a reasonable man would believe the party guilty of the crime charged, there would

exist probable cause for the prosecution. Greer v Whitefield, 4 Lea, 85; Hall v. Hawkins, 5 Humph., 357; Graham v. Life Association, 98 Tenn., 48 37 S. W., 995. And it has been held that it is not sufficient that the party really believed that the crime had been committed by the person accused, when, in truth, the facts within his knowledge were insufficient to create the belief in the mind of a reasonable man. Greer v. Whitfield, supra.

In this state probable cause is a mixed question of law and fact. What facts and circumstances amount to probable cause is a question of law. Whether they exist or not is a question of fact. The former is exclusively for the court, the latter for the jury. Woolworth Co. v. Connors, 142 Tenn., 678, 222 S. W., 1053. This is in accordance with the great weight of authority. L. R. A. 1915D, 1.

It is well settled that when the question of probable cause depends upon substantially disputed facts, and upon inferences of fact to be drawn therefrom, it is for the jury to weigh the conflicting testimony, estimate the creditability of the witnesses, find the inferences warranted by such facts, and determine what the truth is, and whether the facts and circumstances relied on to show the existence or absence of probable cause are sufficiently established, and for the court to decide whether or not they amount to probable cause. Or, as the rule is sometimes stated, the truth and existence of the facts and circumstances is a question of fact exclusively for the jury; but whether they amount to probable cause is a question of law exclusively for the court. L. R. A. 1915D, 1.

In malicious prosecution cases the court should group in its instructions the facts which the evidence tends to prove and then instruct the jury that if they find such facts to be established there was or not probable cause, as the case may be, and that their verdict must be accordingly. It is the duty of the court to direct the jury that, if they find certain facts upon the evidence, or draw from them certain other inferences of fact, there is or is not probable cause; thus leaving the questions of fact to the jury, and keeping their effect, in point of reason, for the decision of the court as a matter of law. Another method is for the jury to make special findings of fact and the court to then determine whether the facts thus found constituted probable cause. L. R. A. 1915D, 1; Memphis, etc., Gas Co. v. J. L. Williamson, 9 Heisk. (56 Tenn.), 314.

There were no special findings of fact in this case and the charge of the court to the jury does not appear in the record. We must therefore assume that the trial court adopted the former method. Since the jury found in favor of the defendant, we must accept as true the existence of all facts and inferences of facts therefrom which the evidence tends to show as constituting probable cause,

and then determine as a question of law whether or not there was probable cause.

The offense charged in the warrant was a violation of section 6462 of Shannon's Code, which is as follows:

> "Any person who takes any female from her father, mother, guardian, or other person having the legal charge of her, without his or her consent, for the purpose of prostitution, or concubinage, shall, upon conviction, be imprisoned in the penitentiary not less than ten nor more than twenty-one years."

In construing this statute the Supreme Court has held that the taking mentioned in the statute does not necessarily imply the use of force, and that it is neither a question of distance nor of time. It does not need to be measured by miles or computed by days or hours. The vital part is whether the female, then living a chaste and virtuous life toward all except the defendant, was taken by force, fraud, or persuasion, beyond the care and control of her parents for the purposes of prostitution or concubinage. South v. State, 97 Tenn. (13 Pickle), 501, 37 S. W., 210.

The facts, as disclosed by the record, were as follows:

In November, 1923, the defendant, M. M. Ledbetter, his wife, Dortha Ledbetter, and his daughter, Iela Ledbetter, who was 16 years of age, lived together above Townsend in Blount county. How far they lived from Townsend does not accurately appear in the record, but evidently it was some little distance. The defendant had a son, Tom Ledbetter, who had married Ola Abbot, a sister of the plaintiff. Whether Tom and his wife lived with the defendant does not appear, but we think it might be inferred from the evidence that they did.

W. F. Abbott, his son, Ted Abbott and his wife, Nora Abbott, lived together near the Ledbetters.

Lela Ledbetter was 16 years of age. She had not been arrested prior to the swearing out of the warrant, but it was evident that she had been giving her father and mother some trouble. Afterwards she was arrested several times in Maryville and had to be taken from the jail at Maryville to testify in the trial of this case. What the arrests were for does not appear. Ted Abbott was 20 years of age, was a married man, but was not living with his wife.

For some days prior to November 24, 1923, Ted and his father had been working on a logging job in North Carolina, but returned home on that day, which was Saturday. On Saturday night Ola (Abbott) Ledbetter spent the night at the Ledbetter home with Lela, and about 2:30 o'clock the next afternoon (Sunday) Ola and Lela went to the Abbott home. A little later Mrs. Ledbetter went to the Abbott home and tried to get Lela to return to her own home, which Lela declined to do. Later the de-

fendant went to the Abbott home to get Lela to return to her own home. As he approached the Abbott home, Ted Abbott met him. As he approached Ted, Ted turned toward the house and whistled, which the defendant thought was a signal to Lela. Ted then tried to prevent the defendant from getting into the Abbott house, and in fact threatened the defendant. There is a conflict as to what passed between them; Ted claiming that the defendant cursed him, threatened to kill Lela, and said to Ted that, "If you wasn't a boy, I would give you a whipping." The defendant denied this and from his version of what occurred, which we accept as true, he did not seem to be any more enraged than any other normal father would have been under the circumstances. In addition to this, we think that, if he made the statement which we have quoted, it shows that he was considerate of Ted and made allowances for him on account of his youth.

Despite Ted's threats the defendant went to the back door of the Abbott house and inquired of Mrs. Abbott if Lela was there. Mrs. Abbott told him that Lela and Ola were in another room of the house, but when he went in they were gone. They had gone out together into the woods and did not return until the defendant had left and gone back to his own home. We think the jury would have been justified in believing that, when Ted saw the defendant approaching he signaled to Lela, and that she ran out into the woods to avoid him.

Lela stayed that night (Sunday night) in the Abbott home and left the next day. She went to both Townsend and Maryville,* but where she stayed does not appear. She did not return to her home until the 28th, the day the defendant swore out the warrant in Maryville.

She was seen in Townsend in a store talking to Ted on the day before the warrant was sworn out. Ted gave her some money, with which she bought a new sweater, which facts the defendant was advised of before he went to Maryville and swore out the warrant. The defendant's son, Tom, had told the defendant that there was something "wrong" between Ted and Lela. Mrs Ledbetter had told the defendant that Lela had told her that Ted had tried and was trying to get her to run away with him; that they had first planned to go to Cincinnati on the same train, but in separate coaches, but that they had given up this idea and planned to go to North Carolina. On the day the defendant swore out the warrant and before he did so he saw Ted Abbott in Maryville, and he had been told that Lela had been there.

He had gone into Maryville that morning and first went to the offices of Jackson & Dunn, attorneys, to lay the matter before Mr. Dunn, but as Mr. Dunn was out he talked to Gen. Jackson, who was

Assistant Attorney General. Both he and Gen. Jackson state that he told Gen. Jackson all of the facts which he knew. Gen. Jackson advised him that, if the facts were true, he would be justified in swearing out the warrant. He then swore out the warrant before the justice of the peace.

When he went home it seems that some of his neighbors and friends told him that the winner of a lawsuit was usually the loser, and they evidently advised him to dismiss the prosecution. He also said that "by some means my daughter refused to tell about her and Ted's plans" and declined to testify against him and that for these reasons he dismissed the warrant and paid the costs of the prosecution.

Nothing else appearing, it would seem clear that these facts con situated sufficient probable cause for believing Ted Abbott guilty of the offense. But it is urged on behalf of the plaintiff that the evidence shows that, when he left his home on the morning of the 28th to go to Maryville, he did not know what his daughter would say about what had occurred; that she had not returned home and that he went to Maryville looking for her; that, when he got there, N. L. Brewer, chief of police, secured information at a hotel from a Mr. Webb that Lela had gone back to Townsend, and so advised defendant; that he did not tell Gen. Jackson this fact and swore out the warrant without waiting to see Lela and find out what she would say. It is urged that a reasonably cautious man would not have sworn out the warrant under these facts and circumstances.

It is true that Mr. Brewer did testify as follows:

"I am chief of police of the city of Maryville. I remember the incident of Ted Abbott being arrested and put in jail on a warrant sworn out by M. M. Ledbetter. I saw M. M. Ledbetter that morning here in Maryville, and he was inquiring for his daughter, Lela. I went up to a hotel and got information from Mr. Webb that Lela had gone back to Townsend, and I came back and told M. M. Ledbetter the information I had received. That was before he had Ted Abbott arrested."

While no witness testified for the defendant that Lela returned home prior to the time the defendant started to Maryville on the 28th, yet we think the evidence of the defendant and his witnesses would justify us in finding that she did, and that, while the defendant himself may not have talked to her, Mrs. Ledbetter evidently did, and told the defendant what she said. Unless this had occurred, we do not see how the defendant could have known at the time he went to Maryville, talked to Gen. Jackson, and swore out the warrant, that Ted and Lela were planning to go to Cincinnati or North Carolina, because it is apparent from the testimony of both Mrs. Ledbetter and Lela that Lela did not tell

her these things until she returned home on the morning of the 28th. Nevertheless it is apparent that the defendant knew these things at the time he went to Maryville and talked to Gen. Jackson. We do not think, therefore, that the record justifies the argument made on behalf of plaintiff.

But even conceding the premises upon which the argument is based, we do not think that the fact that defendant did not see Lela and find out what she would say before he swore out the warrant shows that he acted otherwise than a reasonably prudent and cautious man would have acted, and we think that he had information of sufficient facts to justify him in swearing out the warrant. The girl was only 16 years of age, had evidently caused him considerable anxiety by her waywardness, and he could hardly have expected her to have admitted to him what really occurred between her and Ted during the days she had been away from home.

He was trying to protect his 16 year old daughter from a married man who was living apart from his wife, and we think that, under the facts and circumstances, he had probable cause for swearing out the warrant without waiting to find out what Lela might say.

We therefore hold that at a matter of law there was probable cause, and that the honesty with which he sought Gen. Jackson's advice and the fullness with which he laid all the material facts relating to the case, ascertained or ascertainable by the exercise of due diligence, was sufficient in and of itself to make out a clear defense under the holding of the Supreme Court in Cooper v. Flemming, 114 Tenn., 40, 84 S. W., 801, 68 L. R. A., 849.

But, even if we are mistaken as to the facts being sufficient to show probable cause, we think that the prosecution was without malice. The very fact that both Mrs. Ledbetter and the defendant went after Lela on Sunday afternoon shows that they were anxious about her, and that the other facts above recited would have justified the jury in believing that the defendant had acted without malice, even though he had not had probable cause for thinking the plaintiff guilty; i. e. facts sufficient to create the belief of guilt in the mind of a reasonably prudent man.

The record fails to show that there had been any ill feeling between the defendant and the plaintiff prior to the happening involved in this case, and, the jury having found in favor of the defendant, we would not feel justified in reversing the case, even though we had been of opinion that the facts would not justify a reasonably prudent and cautious man in swearing out the warrant. It is entirely possible for a man to honestly believe that an offense has been committed, although a reasonably prudent and cautious man would not think so under the facts known to him, and would not therefore swear out a warrant. In such case there would not

be "probable cause" (Greer v. Whitfield, 4 Lea, 85), and yet a jury might find in favor of the defendant in the malicious prosecution case because the jury might think that the defendant acted without malice.

Malice may be inferred by the jury from the want of probable cause, but the law makes no presumption. It is a mere inference of fact which the jury may or may not make. Greer v. Whitfield, 4 Lea, 85; Hall v. Hawkins. 5 Humph., 357; Morgan v. Duffy, 94 Tenn., 686, 30 S. W., 735.

The jury having found in favor of the defendant, and there being sufficient evidence in the record to support a finding of the jury that the defendant had acted in the honest belief that the offense had been committed and had acted without malice, we would not therefore be justified in reversing the case, even though there was not "probable cause"; i. e., sufficient facts known to the defendant to justify a reasonably prudent and cautious man in swearing out the warrant.

It results, therefore, that all of the assignments of error are overruled, and that the judgment of the lower court is affirmed.

All concur except Clark, J., absent.