BILLY A. (MOON) MULLINS, Appellee, v. HUBERT
WELLS, Appellant. —450 S.W.2d 599.

Western Section. August 29, 1969.

Certiorari Denied by Supreme Court January 5, 1970.

Rehearing Denied by Supreme Court February 2, 1970.

676

678

Myron Ray Ely, Knoxville, Ely & Ely, Knoxville, of counsel, for appellant.

Robert J. English, Knoxville, for appellee.

MATHERNE, J. The plaintiff Billy A. (Moon) Mullins brought suit against the defendant Hubert Wells for damages due to malicious prosecution. There was a jury verdict and judgment in favor of the plaintiff for $1,000. The defendant has perfected his appeal in error to this Court.

The present suit grew out of a criminal prosecution by the defendant wherein the plaintiff was charged with

receiving stolen property. The plaintiff was arrested, made bond, and was bound over to the July 1967 term of the Knox County Grand Jury. That Grand Jury did not return an indictment. On January 4, 1968 the plaintiff filed a petition in the Criminal Court of Knox County asking that the prosecution be dismissed under the provisions of T.C.A. 40-2102. On January 22, 1968 that Court entered an order dismissing the warrant and the charges contained therein on the ground that no indictment had been returned at the July 1967 term and cause was not shown why such action was not taken.

The record reveals that the defendant's home was burglarized in April 1967 and among other things five shotguns were stolen. This crime was reported to the sheriff's office that night.

The plaintiff was a constable and operated a wrecker service on Sutherland Avenue in Knoxville, Tennessee only a couple of blocks from the restaurant operated by the defendant. The plaintiff and the defendant were good friends at that time.

The deputy sheriffs working on the case were told by the defendant that he would pay anyone a reasonable amount of money if the guns were returned to him, however, he, the defendant, wanted the guilty party arrested and prosecuted.

The investigating officers, for reasons not stated in the record, apparently suspected Ed Long, Sam Clowers and William Edward Marshall as being involved with this crime. The two deputies assigned to the case, W. L. Patterson and John O. Maples, Jr. contacted Bob Marshall the brother of William Edward Marshall. Deputy Patterson testified that he told Bob Marshall:

"Well, I just relayed the message that came from Mr. Wells, what he told me, and I told him if he could get them back that Mr. Wells would be tickled to death to pay for them because he said one of the guns meant a lot to him."

Bob Marshall testified that deputy Patterson told him on that occasion that they suspected his brother William Edward Marshall as being implicated in this crime; that all Mr. Wells wanted was the return of the guns for which he would pay a reasonable amount and no questions would be asked and no prosecution instigated. This witness stated he contacted his brother who assured him that he, the brother, was not involved in the crime; that he conveyed to his brother what deputy Patterson had told him concerning the return of the guns. This witness stated that he forgot about the matter until he received a telephone call from an unknown person that the guns could be returned to Mr. Wells for $85.00, and the person would call back within thirty to forty minutes for an answer. This witness stated he tried to contact the deputies by telephone but they were not at the office. He could not get their home numbers from the office personnel. He thereupon went to the place of business of plaintiff (Mullins) knowing he was a constable in an effort to determine how he could contact the deputies. This witness was well acquainted with both the plaintiff and the defendant.

When Bob Marshall arrived at plaintiff's place of business he found there a deputy sheriff named Bobby Kirby. Marshall told Kirby of the telephone call and the evidence conflicts as to what Kirby said, but he left in his patrol car. Marshall thereupon told the plaintiff about the telephone call. The plaintiff immediately called the de-

fendant by telephone and asked the defendant if he wanted to pay the $85.00 for the return of the guns. Defendant said he would pay that amount. Plaintiff thereupon gave to Marshall $85.00. Marshall left with the money and returned within 15 to 20 minutes with the guns and put them in the trunk of plaintiff's car. Plaintiff immediately drove to the place of business of defendant, gave him the guns and defendant reimbursed plaintiff the $85.00.

Bob Marshall testified he returned to his home with the money and awaited the promised return call from the unknown party. The call came in and by agreement he deposited the money in his mailbox, the party left the guns there and took the money. This witness stated he did not know the individual.

The deputy Bobby Kirby stated that about 20 minutes after he left the place of business of plaintiff he received a radio call to contact the defendant. He called the defendant by telephone and was informed by defendant that he had the guns and was asked to come to defendant's place of business and pick them up for the attorney general. He picked up the guns, tagged them and left them at the office of the sheriff.

The plaintiff refused to tell the defendant the name of the party who contacted him. According to plaintiff this made the defendant angry. The plaintiff did tell the defendant on that occasion that he, plaintiff, would reveal the name to the district attorney. Plaintiff testified that he thought he could solve the crime with the information he had. From the testimony of Bobby Kirby it could also be found that the defendant was considerably upset with the plaintiff for not revealing to him the name of the person who contacted him.

The return of the guns was on a Saturday. The following Monday the plaintiff was called to the office of the district attorney. The defendant was present. The plaintiff at the request of the district attorney gave him the name of Bob Marshall and related the entire proceedings to him in the presence of the defendant. At the district attorney's request the plaintiff agreed to have Bob Marshall at the office on the next Monday. During the ensuing week the plaintiff investigated leads the defendant gave him as to suspects and on the following Monday the plaintiff took to the office of the district attorney, Bob Marshall, Sam Clowers, Truman Collins and Sam Clower's brother. The defendant, Deputies Bobby Kirby, W. L. Patterson and John O. Maples, Jr., were present.

The next day the defendant swore out the warrant for the plaintiff's arrest.

At the meeting the district attorney apparently conferred with all these people. The record does not reveal what facts the defendant revealed to the district attorney nor exactly what advice the district attorney gave the defendant, if any. The district attorney, General Clarence Blackburn, died prior to the trial of this suit.

The record does reveal the following from the testimony of W. L. Patterson.

"Q Mr. Patterson, did General Blackburn tell Mr. Wells that he didn't think he had a case against Mr. Mullins when he took out the warrant?

A Well, I'm not sure whether he—he said—whether he said that to Hubert or not, but he said it to me."

\* \* \* \* \* \*

"Q Whenever General Blackburn told you that he

didn't think Hubert had a case, why did he say he was taking out a warrant?

A Well, I'd rather not answer that if I could get around it.

Q You can't get around it, Mr. Patterson. It is very material to this lawsuit. It is the basis of this lawsuit?

THE COURT: Did he say?

WITNESS: Sir?

THE COURT: Did he say, Mr. Patterson, if he said anything.

A Well, he just said that he was Hubert's attorney, had been his attorney, and if he didn't let him do something like that he'd worry him to death, and he had to do it."

The record is clear that General Blackburn was referring to his having been defendant's attorney prior to the time General Blackburn took office.

██ The defendant claims there was probable cause to justify his prosecution of the plaintiff, and therefore the plaintiff failed to prove lack of probable cause for the criminal prosecution. An essential element to a suit for damages due to malicious prosecution is that the criminal prosecution was brought without probable cause.

 Probable cause for criminal prosecution is said to consist of the existence of such facts and circumstances as would excite in a reasonable mind a belief that the person charged with the crime was guilty thereof. Peoples Protective Life Ins. Co. v. Neuhoff (1966), 56 Tenn.App. 346, 407 S.W.2d 190, citing Poster v. Andrews (1946),

183 Tenn. 544, 194 S.W.2d 337. The question is not whether the defendant is really guilty, but was there good and reasonable grounds for the prosecutor to believe he was. Protective Life Ins. Co. case, supra, citing Cohen v. Ferguson (1959), 47 Tenn.App. 165, 336 S.W.2d 949.

■ The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it are true and existed is a question of fact for the jury. Whether the facts found to be true constitute probable cause is a question of law for the court. Klein v. Elliott (1968), 59 Tenn.App. 1, 436 S.W.2d 867, and cases cited.

■ Where the facts from which probable cause is to be deduced are undisputed, the determination of probable cause is exclusively for the Court; first for the trial court, and then for this Court. Peoples Protective Life Ins. Co. case, supra at 368, and cases cited.

■■ In this case the jury returned a general verdict for the plaintiff and awarded damages of $1,000. Where, in a malicious prosecution case the jury has rendered a general verdict, the appellate court must view the evidence in the light most favorable to the finding of the jury. Klein v. Elliott, supra. The jury by general verdict found in favor of plaintiff, we must accept as true the existence of all facts and inferences of facts therefrom which the evidence tends to show as constituting lack of probable cause, and then determine as a question of law whether or not there was probable cause for the criminal prosecution. Klein v. Elliott, supra, citing Abbott v. Ledbetter (1925), 1 Tenn.App. 458.

The offense of receiving stolen goods is defined by T.C.A. 39-4217 as follows:

Receiving stolen goods over sixty dollars in value—Penalty.—Every person who shall fraudulently receive or buy, conceal, or aid in concealing, any goods over the value of sixty dollars ($60.00), feloniously taken or stolen from another, or goods obtained by robbery or burglary, knowing the same to have been so obtained, with intent to deprive the true owner thereof, shall be imprisoned in the penitentiary not less than three (3) years nor more than ten (10) years.''

█ It is noted that an element of the offense is the ''intent to deprive the true owner'' of the goods. It is therefore obvious that the mere receipt of stolen goods, knowing them to have been stolen, is not of itself a crime, for such receipt may have been for purposes other than with the above quoted intent.

The evidence is undisputed that the defendant offered to pay for the return of the guns. There is also material evidence that the deputy sheriffs spread this word about, which resulted in the plaintiff being contacted by Bob Marshall. There is an abundance of material evidence that the plaintiff immediately called the defendant when he was approached by Bob Marshall; that plaintiff had delivered the guns to the defendant within twenty to thirty minutes from the time he was authorized by the defendant to obtain them, and within ten to fifteen minutes from the time he actually received the guns. There is material evidence that plaintiff, a constable, spent considerable time for one week thereafter attempting to establish who committed the crime; that he revealed the name of Bob Marshall to the district attorney, and that he brought various people to the office of the district attorney for questioning.

All the evidence indicates that the defendant knew all these facts prior to the time he swore out the warrant for plaintiff's arrest.

Under the general verdict for the plaintiff, we must assume the jury found these facts, and with these facts established we hold as a matter of law that there was no probable cause for the prosecution of the plaintiff by the defendant on the charge of receiving stolen property.

Malice, another necessary element in a suit for malicious prosecution, may be inferred from a finding of no probable cause for the criminal prosecution. Peoples Protective Life Ins. Co. case, supra, 436 S.W.2d at 366. Under the general verdict for the plaintiff we must find at least this inference as established by the jury.

The defendant insists that he is not liable because he brought the criminal prosecution on the advice of the District Attorney General.

When advice of counsel has been honestly sought and all the material facts relating to the case, ascertained or ascertainable by the exercise of due diligence, have been presented to counsel, and prosecution is commenced in pursuance of such advice, then it is the province of the court to charge the jury, as a matter of law, that such advice of counsel entitles the party sued to complete immunity from damages. Cooper v. Flemming (1904) 114 Tenn. 40, 84 S.W. 801, 68 L.R.A. 849; Klein v. Elliott, supra. The District Attorney General is counsel whose advice can constitute a defense to an action for malicious prosecution where based upon a full and

honest presentation of the material, ascertainable facts. Peoples Protective Life Ins. Co. case, supra.

██ Whether the prosecutor acted upon advice of counsel and whether he made a complete disclosure of all the facts and circumstances are questions of fact for the jury. The mere statement of a prosecutor that he made a full and fair disclosure of all the facts to his counsel is not conclusive. What the prosecutor stated to counsel should be proven, and the jurors should then decide whether the statement was a full and fair one or not. Klein v. Elliott, supra and cases cited.

In this case the defendant claims he acted upon advice of the District Attorney General who had conducted his own investigation of the crime, and who advised the defendant to bring the prosecution.

If the defendant had no first hand knowledge of the facts at all, but received his information from the District Attorney General, who in turn had obtained it from other sources, the defense would have some merit.

However, there is material evidence to the contrary. The defendant actively participated in the act of the plaintiff in effecting a return of the stolen property; he paid $85.00 to get this done, and authorized not only the plaintiff but the two deputy sheriffs assigned to the case to effect a return of the property. The plaintiff made a full disclosure of the entire transaction, including the name of Bob Marshall to the District Attorney General in the presence of the defendant.

Under the facts proven in the record it is highly improbable that an experienced District Attorney General would have felt that the plaintiff could be convicted of

the charge brought. In fact the statement of that official to witness W. L. Patterson is to the contrary. It cannot be assumed that General Blackburn would have advised the defendant differently.

These proven contradictory facts and circumstances were sufficient to take to the jury the issues of whether a full and fair disclosure was made to the District Attorney General, and whether defendant acted on advice of counsel. The Trial Judge was correct in refusing to direct a verdict for the defendant based on the defense of advice of counsel. Under the general verdict we must assume the jury found against the defendant in this respect.

The review of the evidence heretofore made on the issues discussed establishes that there was material evidence to support the verdict of the jury. Defendant's Assignment of Error on that ground is therefore overruled.

Defendant's Assignment of Error that the evidence preponderates against the verdict does not present a question properly to be determined by this Court on appeal in error, and is overruled. Stacks v. Veteran's Cab Co. (1962) 51 Tenn.App. 272, 366 S.W.2d 539.

All assignments of error having been overruled, the judgment of the Trial Court is affirmed. Costs in this cause are adjudged against the defendant, Hubert Wells.

Carney and Taylor, JJ., concur.