Cheryl LEWIS, Appellee,

v.

Ernest W. WILLIAMS and Commerce Union Bank, Appellants.

Supreme Court of Tennessee.

March 2, 1981.

Rehearing Denied May 11, 1981.

---

Hugh C. Gracey, Sr., Malcolm L. McCune, Gracey, Maddin, Cowan & Bird, Nashville, for appellant.

Frank S. King, Jr., King & Ballow, Nashville, for appellee.

## OPINION

COOPER, Justice.

This is an action for damages for malicious prosecution. The action was brought by Cheryl Lewis against Ernest W. Williams and his employer, Commerce Union Bank. The underlying criminal prosecution involved the arrest of Miss Lewis on a warrant charging her with "forgery and/or passing forged papers." The warrant was issued at the request and upon the sworn testimony of Mr. Williams in his capacity as an investigator for the bank. Before a preliminary hearing was held, the charge against Miss Lewis was dismissed on motion of the state made at the request of employees of the bank. Miss Lewis then filed her action for damages, with the result that the jury awarded her compensatory damages of $5,000.00 and $20,000.00 as punitive damages. The trial court entered a judgment based on the jury's verdict.

The Court of Appeals affirmed the judgment, holding that the law in Tennessee is that the existence or lack of existence of probable cause in a malicious prosecution action is a question of fact for the jury where there is a conflict of evidence on the issue. In so ruling the court characterized as dictum the holding of this court in *Cohen v. Cook*, 224 Tenn. 729, 462 S.W.2d 499 (1970), that in an action for malicious prosecution, the existence or lack of existence of probable cause is a question of law for the court and that it is error to submit this issue to the jury.

We granted defendants' application for permission to appeal to reiterate the statement of principle set forth in *Cohen v. Cook, supra,* and to determine whether the submission of the issue of probable cause to the jury without qualifying instructions, being error, was prejudicial error requiring a reversal of the judgment. The resolution of the latter issue is dependent on whether the evidence germane to the issue of probable cause was disputed and, if not, whether the evidence established an absence of probable cause. We are also faced with the

question of whether there is material evidence to support the jury's finding of malice.[1]

*Cohen* was a malicious prosecution case in which the issue of probable cause was presented to the jury. The Court of Appeals approved this action. *See Cohen v. Cook*, 62 Tenn.App. 292, 462 S.W.2d 502. The petition for certiorari to the Court of Appeals was denied initially; however, on receiving a petition to rehear, certiorari was granted to consider whether or not the trial judge erred in permitting the jury to determine the issue of probable cause. The court concluded that it was error, but pointed out that the error had been waived by the defendant's failure to raise the issue in its motion for new trial and affirmed the judgment entered in the Court of Appeals.

On the issue of probable cause, the court had the following to say:

In a malicious prosecution action the determination from the evidence of the existence or lack of existence of probable cause is a question of law for the court and it is error to submit this issue to the jury. In cases where the evidence upon which this issue is to be determined is admitted or undisputed and only one inference can be drawn therefrom the matter presents no great difficulty for the trial judge. In cases where the evidence on this issue is conflicting, such does present to the trial judge a difficult duty as it involves instructing juries on a mixed question of law and fact; but difficult or not, where the evidence is conflicting on this issue it still remains the province of the trial judge as a matter of law to determine the existence or lack of existence of probable cause.

Where the evidence determining the existence or lack of existence of probable cause is conflicting, there are two methods open to the trial judge. First, the trial judge can submit special questions to the jury requiring the jury to determine whether certain facts are or are not established by the evidence, and then based upon this determination made by the jury

1. The amount awarded Miss Lewis as damages is not an issue in this court.

the trial judge, as a matter of law, determines the existence or lack of existence of probable cause. Secondly, the trial judge can state hypothetically the facts relied upon by both the plaintiff and defendant on the issue of probable cause, instructing the jury if it finds the facts relied upon by the plaintiff to be established by the evidence, then as a matter of law there was a lack of probable cause for the prosecution of the action upon which the malicious prosecution action is founded; but if it finds the facts relied upon by the defendant established by the evidence then as a matter of law there was probable cause for the prosecution of the action upon which the malicious prosecution action is founded.

462 S.W.2d at 500.

The genesis of this rule is in the early Tennessee cases of *Kelton v. Bevis*, 3 Tenn. 90 (1812) and *Memphis Gayoso Gas Co. v. Williamson*, 56 Tenn. 314 (1872). Together, the holdings in these cases are encompassed in the principles set forth in the *Cohen* case as decided by this court. A long line of cases since *Memphis Gayoso* has approved this rule, more commonly using language such as that cited in *Klein v. Elliott*, 59 Tenn.App. 1, 436 S.W.2d 867 (1968):

The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it are true and existed is a question of fact for the jury. Whether the facts found to be true constitute probable cause is a question of law for the court.

*See also Landers v. Kroger*, 539 S.W.2d 130 (Tenn.App.1976); *Mullins v. Wells*, 60 Tenn. App. 675, 450 S.W. 599 (1969): *Lawson v. Wilkinson*, 60 Tenn.App. 406, 447 S.W.2d 369 (1969); *Bankhead v. Hall*, 34 Tenn.App. 412, 238 S.W.2d 522 (1951); *Nashville Union Stockyards, Inc. v. Grissim*, 13 Tenn.App. 115 (1930); Restatement Torts 2d § 673 (1977); W. L. Prosser, The Law of Torts 846–47 (4th ed.1971); W. L. Prosser & J. W. Wade, Cases and Materials on Torts, 982–83 (5th ed.1971).

In this case the circumstances leading to the prosecution of Miss Lewis were solely within the knowledge of the employees of the bank. Consequently, the evidence on the issue of probable cause was not disputed and, we think, clearly shows a lack of probable cause for the prosecution of Miss Lewis on a charge of "forgery and/or passing forged papers."

The incident that lead to the prosecution occurred on March 29, 1977. Commerce Union Bank cashed a check in the amount of $232.00 drawn on the account of Corroon and Black, Armistead Miller Wallace of Tennessee, Inc., payable to Claudia J. White. Payment of the check was approved by a bank officer, who noted the payee's driver's license number on the back of the check.

Sometime in April, 1977, the bank received notice from Corroon and Black that the check was a forgery. Mr. Williams took an affidavit to this effect from an employee of Corroon and Black and then set about to discover who had passed the check.

The bank follows the procedure of having the date, time, and code number machine printed on the back of a check at the time it is cashed. On inserting the check in the machine at the teller's window, a photograph is automatically taken of the person conducting business at the teller's window. The time of the transaction is imprinted on the photograph. This procedure was followed on the cashing of the check for Claudia J. White on March 29, 1977.

Mr. Williams examined the check and read the time stamp as 2:37 p. m. on March 29, 1977—the time actually stamped on the check was 12:37 p. m. The photograph was developed of the individual at the proper teller's window at a time near that shown on the check. The individual shown in the photograph was known to the teller[2] and was believed by the teller to be employed at a nearby Quick Check Market. The time shown in the photograph of the person later identified as Miss Lewis was 2:43 p. m. Without making any comparisons with other transactions, Mr. Williams discounted the

2. Miss Lewis had both a savings and checking account at Commerce Union Bank.

discrepancy in the time as "clock error." Mr. Williams also made no effort to "check-out" the information on the check taken by the bank officer from the driver license presented by the person that cashed the check.

Mr. Williams went to the Quick-check Market and talked with Mr. Hughes, who identified the person in the bank photograph as Cheryl Lewis and on request, gave Mr. Williams a W–4 form signed by Miss Lewis. The W–4 form was taken to Mr. Williams' supervisor for comparison of signatures. The supervisor, who had had some training in handwriting analysis but admittedly was not an expert, expressed the opinion that the signatures were written by the same person.

Mr. Williams then contacted Robert Dodson of the Metropolitan Criminal Investigative Division and informed him that he had a picture of the person who had passed a forged check and that he had identified the person as Cheryl Lewis. Mr. Williams did not then swear out a warrant for Miss Lewis, but waited until the following Saturday to do so so that Miss Lewis could be detained over the weekend for questioning "about what they supposed to be a ring of forgers running around at that time."

Miss Lewis was arrested at her place of employment on Saturday afternoon, April 29, 1977, and was taken in a police car to headquarters where she was fingerprinted and photographed. Despite the request by Officer Dodson and bank investigators that Miss Lewis be held in custody over the weekend for questioning, she was permitted to make bond.

On Miss Lewis' appearance in the general sessions court, the hearing of the charges against her was passed as her attorney was out of the city. Mr. Williams and Mr. Dodson sought permission from substitute counsel to question Miss Lewis, indicating that if she were cooperative they would speak to the District Attorney General in her behalf. This request was denied.

According to Mr. Williams, the lack of cooperation on Miss Lewis' part made him apprehensive about the case he had worked up against her. The next morning, he reexamined the forged check, found the correct time of the check-cashing transaction to be 12:37 p. m., and that the photograph of the transaction clearly showed that Miss Lewis was not involved. Mr. Williams then called upon the District Attorney General's office to move to have the charge against Miss Lewis dismissed.

In *Thompson v. Schulz*, 34 Tenn.App. 488, 240 S.W.2d 252 (1949), it is pointed out that:

Definitions of probable cause, however differently expressed, all agree in these two essentials: (1) The prosecutor must in good faith have honestly believed the accused was guilty of the crime charged; and (2) his belief must have been reasonable—based on facts and circumstances sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged. The prosecutor must have made the investigation an ordinarily prudent person would have made in the circumstances.

■ The key to the bank's investigation of the check-cashing incident was the time the check was cashed. Mr. Williams admittedly misread the time stamped on the check. Even so, the photograph of Miss Lewis taken while she was at the teller's window bore the time of 2:43 p. m., not 2:37 p. m. Despite this discrepancy, and despite the fact that the time of the incident was the key, Mr. Williams made no effort to resolve the time difference. A check either of the accuracy of the bank clock by reference to other transactions on March 29, 1977, or a reexamination of the time stamped on the back of the forged check would have revealed that Miss Lewis could not have been involved in the passing of the forged instrument. In short, the very facts that led Mr. Williams voluntarily to have the charge against Miss Lewis dismissed were in his possession at all times—all he had to do was to check them. An investigator can not close his eyes to the truth of matters within his actual possession and then justify the bringing of a criminal action on the basis he did not know the truth.

Appellants insist the evidence shows they acted without malice in instituting the prosecution of Miss Lewis, and that the submission of the issue of malice to the jury was error. Appellants also insist there is no credible evidence to support an award of punitive damages against them. We see no merit in either insistence. It is settled law that malice may be inferred from the fact that a criminal prosecution was brought without probable cause. *Mullins v. Wells*, 60 Tenn.App. 675, 450 S.W.2d 599 (1970); *Abbott v. Ledbetter*, 1 Tenn.App. 458 (1925). *See also* 54 C.J.S. *Malicious Prosecution* § 43 (1948). The inference is not one of law but is a presumption of fact which may be rebutted, thus making malice an issue to be decided by the jury where a criminal prosecution is instituted without probable cause. *See Mullins v. Wells, supra*. In this case there is not only the inference of malice from the lack of probable cause, but there is evidence from which the jury could conclude that Mr. Williams acted in reckless disregard of the rights of Miss Lewis. He recognized the discrepancy between the time shown on the picture of Miss Lewis at the teller's window and the time stamped on the back of the check as he read it. He made no effort to resolve it, but attributed it out-of-hand to "clock error." This put him in the position of instituting the prosecution of Miss Lewis when he had in his possession evidence that clearly exonerated her. Under these circumstances, we feel that the issues of malice and punitive damages were issues for the jury, and that the evidence supports the jury's verdict for the plaintiff on both issues.

Judgment affirmed. Costs incident to the appeal are adjudged against the appellants and the surety. The cause is remanded for enforcement of the judgment.

BROCK, C. J., and FONES and HARBISON, JJ., concur.

DROWOTA, J., dissents.

DROWOTA, Justice, dissenting.

I respectfully dissent.

### I.

The majority opinion has correctly set forth the law in Tennessee regarding the respective provinces of judge and jury in determining the existence or nonexistence of probable cause. As was stated by this Court in *Cohen v. Cook*, 224 Tenn. 729, 462 S.W.2d 499 (1970), when the facts are undisputed and only one inference can be drawn from those facts the trial judge decides the issue alone, and when the facts are in dispute, the trial judge must devise a way to let the jury decide the "factual" questions while retaining for himself the question of whether the facts found constitute probable cause. The majority opinion correctly states that this rule has been with us since at least 1812. See *Kelton v. Bevins*, 3 Tenn. 90, 97 (1812).

Two separate decisions on the same case by two separate appellate courts have caused confusion on whether probable cause is a question of law for the court or a question for the jury. The Court of Appeals in *Cohen v. Cook*, 62 Tenn.App. 292, 302, 462 S.W.2d 502, 507 (1969), held "[w]here reasonable men might reach different conclusions from undisputed facts, the question is for the jury." In the case at bar the Court of Appeals relied upon the above language in overruling the defendants' contention that it was error to submit the question of probable cause to a jury. The Supreme Court in *Cohen v. Cook* held the issue was one of law for the court, and the Court of Appeals in this case has characterized such language as dictum.

The rule set out by the Supreme Court in *Cohen v. Cook*, stated in various ways, appears to be the law in the majority of states:

Whether the want or existence of probable cause is to be determined by the court or by the jury depends in the first place on the existence or nonexistence of a conflict in the evidence on the specific point, and in the second place, if the evidence is conflicting, on the view entertained in the particular jurisdiction.

If there is no dispute as to the facts, and the facts themselves do not lead to different inferences, the question whether or not there was probable cause for the institution of the former proceedings is to be decided by the court alone, as a matter of law; in such a situation the court has no need for a finding of a jury.

If there is a conflict in the evidence as to the circumstances out of which the prosecution arose, the overwhelming preponderance of authority appears to sustain the general rule of the common law that the question what facts, and whether particular facts, constitute probable cause is a question of law which the judge must decide on the facts admitted or found to exist in the particular case, and which it is error for him to submit to the decision of the jury. Under this rule, the jury are to find what facts do exist when the evidence is conflicting or leads to different inferences, but the question whether on the facts as proved and found probable cause has or has not been made out is one which the court must decide; for this reason, probable cause has often been said to be a mixed question of "law and fact."

52 Am.Jur.2d Malicious Prosecution § 184 (1970).

*See also,* 54 C.J.S. Malicious Prosecution § 97 (1948), Restatement (Second) of Torts § 673(1)(c) and comment e (1976), and 87 A.L.R.2d 183 (1960).

The determination, however, of what the law has been in Tennessee or is in many of our sister states should not end the inquiry. We must concern ourselves with what is the better rule. In my judgment, the question of probable cause should be for the jury. Dean Prosser tells us that probable cause has been defined as, "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense." Prosser, The Law of Torts 841 (4th ed. 1971). *Cotton v. Underwood,* 223 Tenn. 122, 126, 442 S.W.2d 632, 634 (1969), also speaks of probable cause as reasonable grounds to believe the party prosecuted is guilty. The Tennessee Pattern Jury Instructions—Civil, issued by the Tennessee Judicial Conference contains, curiously enough, a jury charge on probable cause:

To constitute probable cause for the criminal prosecution of [civil action against] the plaintiff in this case, the evidence must establish that the defendant actually believed, and had a reasonable basis for his belief, that the plaintiff performed the act charged. That is, he must have examined the situation in the same manner as an ordinarily prudent man would have done.

Tennessee Pattern Jury Instructions—Civil, 8.23.

Thus, the heart of the inquiry as to whether or not probable cause exists is reasonableness. The crucial question is whether the defendant was reasonable in his belief that the accused committed the crime.[1] Inextricably bound up with that question is the reasonableness of the defendants' examination of the situation. *See Thompson v. Schulz,* 34 Tenn.App. 488, 240 S.W.2d 252 (1949).

By way of example, in the instant case Mr. Williams did not see on initial examination without a magnifying glass the numeral (1) one in 12:37 p. m. which was on the back of the forged check and also failed to resolve the six minute discrepancy between the time he read on the check and the time shown on Miss Lewis's picture. The result in this case turns, as evidenced by the majority opinion's discussion, upon the reasonableness of Mr. Williams's investigation. This is a determination properly made by a jury because it is one about which reasonable minds could differ.

---

1. In *Cohen v. Cook,* 62 Tenn.App. 292, 302, 462 S.W.2d 502, 507 (1969), Judge Todd states:

What an ordinarily prudent person would do in particular circumstances is a matter upon which the trier of fact must draw upon observation and experience with respect to what is customarily regarded in the community as a prerequisite for the protection of others. *Coleman v. Byrnes,* 34 Tenn.App. 680, 242 S.W.2d 85 (1950). There is no reason why this principle of negligence law should not apply equally to all questions of reasonableness of conduct.

The rule restated by the majority of this Court has been criticized in some jurisdictions as an, "... apparent anomaly, on the ground that it invests the judge with power to determine what is ordinarily, if not always, really a question of fact to be determined on the facts and circumstances of the particular case." 52 Am.Jur.2d Malicious Prosecution § 184 (1970), see cases cited at notes 4 and 5. As Dean Prosser states:

> The courts have always distrusted malicious prosecution actions, and have retained a strong hand over them. For this reason the existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court. That is to say, the court will determine whether upon the appearances presented to the defendant, a reasonable man would have instituted the proceedings. The disingenuous reason sometimes is given, that since the authority to bring criminal prosecutions is derived from the law, it is for the law to determine what will constitute justification for it.

Prosser, The Law of Torts 846–47 (9th ed. 1971).

One reason widely advanced for the present rule is that juries may have difficulty in distinguishing between the question of the innocence of the accused and the reasonableness of the accuser's conduct. 87 A.L.R.2d 183, 192 (1960). I cannot agree with this line of reasoning. The issue of whether the instigator of criminal proceedings acted as would an ordinarily prudent person under the circumstances is not materially different from the issues faced by every jury in the whole range of negligence cases.

Moreover, even the approach taken by the majority will often give the jury the opportunity to decide the ultimate question. As pointed out in *Cohen v. Cook*, 462 S.W.2d 500, when the facts are in dispute the trial judge has two choices. He may require the jury to make special findings of fact and then rule on the issue of probable cause or he may state alternative versions of the facts hypothetically and instruct the jury as to which version of the facts would provide the defendant with probable cause. As discussed, the reason offered for taking this issue away from the jury in the first place is that they will be confused and will not protect the rights of the defendant. Certainly, in using either of the two methods, particularly the latter, the potential for injustice is still present, since the jury still decides the crucial "factual" questions and is keenly aware of what effect their decision will have on the defendant's liability. In addition, the task of formulating interrogatories or hypothetical fact patterns "... does present to the trial judge a difficult duty ..." *Cohen v. Cook, supra* at 500.

I find the procedure outlined in *Cohen v. Cook*, cumbersome, unnecessary, and extremely difficult for judge and jury. The better procedure would be to let the jury decide whether the instigator of criminal proceedings acted reasonably and avoid the difficulties presented by the majority's approach. As stated in the majority opinion, the issues of malice and punitive damages are issues for the jury:

> ... malice may be inferred from the fact that a criminal prosecution was brought without probable cause. The inference is not one of law but is a presumption of fact which may be rebutted, thus making malice an issue to be decided by the jury where a criminal prosecution is instituted without probable cause.

I see no good reason to take the issue of probable cause away from the jury and yet require the jury to determine malice and punitive damages.

### II.

Had I concurred with the majority's approach, I would not have affirmed the judgment of the trial court but would have remanded the case to the trial court for a trial as contemplated by Chief Justice Dyer in *Cohen v. Cook*.

The majority opinion after finding that it was error to submit the issue of probable cause to the jury, did not reverse and remand but found such error was not prejudicial. The majority concluded that the evidence on the issue of probable cause was not disputed and clearly showed a lack of probable cause. I cannot agree that the evidence established an absence of probable cause as a matter of law. It cannot be said that only one inference can be drawn from the undisputed facts. On the contrary, there was material evidence upon which reasonable minds could differ and upon which different inferences could be drawn from the evidence. As I interpret *Cohen v. Cook*, a jury must resolve the face issues, and the trial court must then rule on whether the facts found by the jury established probable cause. The methods described by the Supreme Court in *Cohen v. Cook*, should have been used in determining whether the defendant conducted a reasonable investigation.

The defendant Williams testified that at the time he swore out the criminal warrant against the plaintiff, he based his belief that she forged the check on (1) the picture, (2) the eyewitness identification, and (3) the resemblance of the handwriting. Williams misread the time on the back of the forged check initially because the time printing machine "malfunctioned." He read the time as 2:37 for he could not see the numeral (1) one with his naked eye.[2] Based upon this time, pictures were developed of the teller's window at the time indicated on the back of the forged check. Williams testified that twenty minutes worth of pictures were developed because it was not unusual for the clock, which is hand set, "to be five, ten, fifteen minutes off one way or the other." These pictures were shown to the teller who was involved in the transaction. The teller positively identified the individual in the picture as the one who passed the forged check. She had independent recollection of the transaction, and although she did not know the individual's name, she

thought she remembered where she worked. Williams proceeded to the place where the teller thought the individual pictured in the photograph worked and there obtained the identification of the individual as Miss Lewis. Williams obtained a sample of plaintiff's handwriting. A comparison of the handwriting on the check to that of plaintiff's handwriting led a bank employee trained in handwriting analysis to conclude that they were written by the same person. Armed with a positive eyewitness identification by an employee who recognized plaintiff and a handwriting comparison, Williams secured a warrant for plaintiff's arrest.

It was not until much later, when he examined the check under a magnifying glass, that Williams determined that the machine which printed the time of the transaction had malfunctioned and printed 2:37 rather than 12:37, the latter being the actual time of the transaction involving the forged check.

The majority opinion states that "the key to the bank's investigation of the check-cashing incident was the time the check was cashed." Under *Cohen v. Cook*, special questions should have been submitted to the jury to determine whether certain facts were or were not established by the evidence. For example, would an ordinarily prudent person under like or similar circumstances, when examining the forged check in question, conclude that the check was cashed at 12:37 p. m. or 2:37 p. m.? After determining this fact, the jury could then be asked if an ordinarily prudent person had concluded that the check read 2:37 p. m., would he, under the facts and circumstances in this case, be placed on notice that a problem existed when the picture of plaintiff bore the time 2:43 p. m. and not 2:37 p. m.—a six minute discrepancy. These are the types of questions based on the undisputed evidence, upon which more than one inference could be drawn and rea-

---

**2.** From my study and observation of the forged check I too am unable to see the numeral (1) one with my naked eye.

sonable minds could differ.[3]  The answers to these types of questions would reveal to the trial judge whether the defendant had conducted a reasonable investigation and whether the defendant did or did not have probable cause for the prosecution of plaintiff.  I feel the majority opinion is in error when it holds as a matter of law that the defendant had no probable cause.

I am also disturbed by the size of the verdict in this case.  Plaintiff was awarded $5,000.00 compensatory damages, and $20,-000.00 punitive damages, the total amount sued for.  The jury initially returned the following verdict—"We rule for the plaintiff and we rule the maximum."  I feel the award of punitive damages is excessive under the facts and circumstances of this case.

**3.** "If, on the undisputed facts, reasonable men might reach different conclusions as to whether facts amounting to probable cause exist, the existence of such facts is a question to be determined by the jury."  54 C.J.S. Malicious Prosecution § 97, p. 1089.