James E. HARDIN, James C. Hardin
and Ralph Majors,
Plaintiffs-Appellees,

v.

Albert CALDWELL, Larry Caldwell,
Robert Campbell and Mark
Swaggerty, Defendants-Appellants.

Court of Appeals of Tennessee,
Eastern Section.

April 23, 1985.
Permission to Appeal Denied by
Supreme Court Aug. 12, 1985.

Robert H. Watson, Jr., of Watson & Emert, Knoxville, for Albert Caldwell and Larry Caldwell, defendants-appellants.

Lawrence P. Leibowitz of Leibowitz & Associates, Knoxville, for Robert Campbell, defendant-appellant.

Jerrold L. Becker of Lockridge & Becker, P.C., Knoxville for Mark Swaggerty, defendant-appellant.

Herbert S. Moncier, Knoxville, for plaintiffs-appellees.

## OPINION

FRANKS, Judge.

In these consolidated cases, the three plaintiffs were awarded jury verdicts and judgment for damages against the defendants on the basis defendants conspired to maliciously prosecute the plaintiffs. Each plaintiff was awarded joint and several judgments of $10,000.00 compensatory and $10,000.00 punitive damages.[1]

On the night of December 23, 1978, the defendants drove their vehicle into an apartment complex where the plaintiffs were gathered with their families for holiday festivities. Upon observing a plastic Santa Claus decoration on the exterior of plaintiff James E. Hardin's apartment, defendant Caldwell took the Santa Claus and plaintiff James C. Hardin chased Caldwell on foot. Plaintiff Ralph Majors observed

---

1. The plaintiff Ralph Majors, was awarded $5,000.00 compensatory damages and $10,000.00 punitive damages as to the malicious prosecution claim, and $5,000.00 on the assault and battery claim against defendants Larry E. Caldwell and Robert E. Campbell.

defendants' vehicle speeding away and gave pursuit in his vehicle. A short distance from the apartment, the vehicle operated by defendant Campbell stopped, Majors stopped his vehicle and Majors, upon alighting from his car, was confronted by Campbell who pointed a loaded, sawn-off shotgun at Majors. Simultaneously, Larry Caldwell, who was being pursued, arrived on the scene and Campbell passed the shotgun over the vehicle to Caldwell, whereupon Majors and James C. Hardin attempted to disarm Caldwell and, during the melee, the shotgun discharged into the side of Campbell's vehicle. The shotgun was wrested from Caldwell and the shells ejected by Majors. Hardin subdued Caldwell, who also attempted to draw a Derringer from his pocket.

The police came to the scene and the father of young Caldwell, Albert Caldwell, who was the assistant police chief for the City of Knoxville, also came to the scene. The police searched Larry Caldwell and the loaded Derringer was taken from his coat pocket. A search of Campbell revealed a spring loaded switchblade knife and a search of defendants' automobile uncovered yet another shotgun. The investigating officers filed criminal charges against Campbell and Caldwell and Majors subsequently filed charges against Campbell. The investigating officers placed no charges against any of the plaintiffs.

On December 28th, the defendants, with the exception of Chief Caldwell signed warrants against all three plaintiffs on multiple charges of assault and battery. All three plaintiffs were arrested, booked and placed in jail until they obtained a bond.

Plaintiffs appeared for trial in the Knox County Sessions Court and, after a hearing, the charges placed against the plaintiffs by the defendants were dismissed; however, the charges against defendants Campbell and Caldwell were bound to the grand jury, where they were subsequently indicted but, after numerous continuances, the charges against them were diverted.

 Defendants question the sufficiency of the evidence to establish a con-

spiracy. A civil conspiracy is a combination between two or more persons to accomplish by concert an unlawful purpose or to accomplish a purpose, not in itself unlawful, by unlawful means. *Huckeby v. Spangler*, 521 S.W.2d 568 (Tenn.1975); *Brumley v. Speedway & Motordrome Co.*, 138 Tenn. 534, 198 S.W. 775 (1917); *Blalock v. Temple*, 38 Tenn.App. 463, 276 S.W.2d 493 (1954). In cases where the parties conspire to maliciously prosecute, it is not necessary that all conspirators sign the affidavit for the issuance of the arrest warrants. *See* 52 Am.Jur.2d, *Malicious Prosecution*, § 25.

 The trial judge properly submitted the issue of conspiracy to the jury. There is evidence that Chief Caldwell requested the other defendants come to his office four days after the incident and, upon arrival, statements and charges were formulated. After the warrants were typed, Chief Caldwell personally presented the warrants to a magistrate. While the magistrate issued the warrants, he testified he advised Caldwell he "was making a mistake". Caldwell then personally supervised plaintiffs' arrests. There is ample evidence to support the jury's decision that Albert Caldwell conspired with the other defendants to maliciously prosecute plaintiffs.

 After the defendants congregated in Chief Caldwell's office, the chief directed Sharon Boyce, a practising Knoxville city attorney, to take statements and prepare the warrants. From this circumstance, the defendants assert they relied on advice of counsel in the issuance of the warrants. This was a disputed factual issue for determination by the jury. The attorney denied she was representing the defendants at the time and testified she took the defendants' statements and drew up the warrants at the behest of Chief Caldwell.

 Next, defendants argue the awards of compensatory damages are excessive. The plaintiffs were charged with criminal offenses, arrested, booked and incarcerated in jail until cash bonds were made, and

incurred attorneys' fees of $500.00 each in defending themselves against the criminal charges. Plaintiffs also testified to losses from work of one, three and seven days. The charges resulted in prominent and widespread publicity. A report of the charges appeared on the front page of the *Knoxville Journal,* Knoxville's morning newspaper, and were reported in detail in Knoxville's afternoon paper, the *Knoxville News Sentinel.* Plaintiffs testified to inconvenience, embarrassment, humiliation and mental suffering resulting from the charges. *See* 52 Am.Jur.2d, *Malicious Prosecution,* § 97. The trial judge approved the jury verdicts and we conclude the verdicts for compensatory damages are within the range of reasonableness and affirm the judgments.

 Further, defendants insist the joint and several judgments of $10,000.00 as punitive damages in favor of each plaintiff are excessive. Punitive damages are recoverable in actions based on malicious prosecutions. *Lewis v. Williams,* 618 S.W.2d 299 (Tenn.1981). These damages relate to the nature of the defendant's actions in inflicting or causing injury rather than the nature or extent of the injury that results. *Inland Container Corporation v. March,* 529 S.W.2d 43 (Tenn.1975). It is well established that the award of punitive damages lies strictly within the discretion of the triers of fact, *Bryson v. Bramlett,* 204 Tenn. 347, 321 S.W.2d 555 (1958), and the amount of such damages may be reduced only upon the showing of abuse of discretion by the triers of fact. *Lichter v. Fulcher,* 22 Tenn.App. 670, 125 S.W.2d 501 (1938).

In *Suzore v. Rutherford,* 35 Tenn.App. 678, 251 S.W.2d 129 (1952), this court formulated some guidelines for the assessment of punitive damages:

"In assessing the damages, the jury should take into consideration the attendant circumstances. So, particular matters which are to be considered are the nature of the case at bar, the nature or character of the act, the malice or wantonness of the act, the motive for the act, the manner in which it was committed, the injury intended or likely to result from a disregard of duty, the character and extent of the injury, and, according to some cases, the character of the parties, at least the character of defendant. In short, as a general rule, the material matters to be considered in determining the amount are what would be a proper punishment for the offending person, and the deterrent effect of the award on others."

*Id.,* at 683–4, 251 S.W.2d 129, quoting C.J.S., on *Damages,* § 126.

It is the general rule in most jurisdictions that punitive damages are assessed "as punishment of each wrongdoer by exacting from his pocketbook a sum of money which according to his financial ability, will hurt, but not bankrupt." *Lehman v. Spencer Ladd's, Inc.,* 182 So.2d 402 (Fla.1965). *Also see Reynolds v. Pegler,* 123 F.Supp. 36 (S.D.N.Y.1954); *aff'd* 223 F.2d 429 (2nd Cir.); *cert. denied;* 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1955).

 In the instant case, the record does not establish that any of the defendants has a substantial personal estate. It is indicated that Albert Caldwell's annual salary is approximately $32,000.00 and has an equity in a home he is buying with his wife. His son has an annual salary of approximately $18,000.00. Likewise, the remaining defendants have incomes in the range of approximately $7,500.00 to $12,000.00 per year without substantial personal assets. We conclude the punitive damages awards are excessive and each award should be reduced to $5,000.00.

The remaining issues are without merit. We affirm the judgment of the trial court, as modified, and remand with costs of appeal assessed one-half to the plaintiffs and one-half to defendants.

PARROTT, P.J., and GODDARD, J., concur.